Clarence D. ROGERS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20482.

United States Court of Appeals Fifth Circuit.

April 8, 1964.

Rehearing Denied May 22, 1964.

4. Appellees' witnesses valued the severance damages at from $21,950 to $22,810.

Charles R. Wheeler, Fort Worth, Tex., for appellant.

William L. Hughes, Jr., Charles Cabaniss, Asst. U. S. Attys., Fort Worth, Tex., Barefoot Sanders, U. S. Atty., for appellee.

Before BROWN, WISDOM and BELL, Circuit Judges.

WISDOM, Circuit Judge.

The appellant, Clarence D. Rogers, was convicted under 18 U.S.C.A. § 495 on two counts of forging, publishing, and uttering a United States Government check. On appeal he challenges the denial of a motion to suppress from evidence a signed confession and a handwriting sample. He contends that the police obtained this evidence while they were detaining him illegally. We affirm.

### I.

There is no substantial dispute over the facts.

The United States Secret Service sent agent Robert A. Stewart to Fort Worth, Texas, to investigate the forged endorsement of a United States Government check for income tax refund. The morning of August 11, 1961, accompanied by a postal inspector and two Fort Worth detectives, Stewart went to the liquor store of Mr. Fred Haberzettle, who had cashed the check. One of the detectives had had previous dealings with Haber-

zettle and knew him to be a man of honesty and reliability. Haberzettle told the officers that a man named Nelm Swallow brought the check into his store to be cashed, and that the payee's name was signed across the back of the check. At the time, Swallow mentioned to Haberzettle that Lonnie Williams owned a part of the check. Later when the check was returned to Haberzettle from his bank as a forgery, he got in touch with Swallow. In an attempt to frighten him and recover the money, Haberzettle led Swallow to believe that his partner in this crime had already been picked up by the police and was in jail. Swallow fell for it. He responded, "Who, Chuck Rogers? [or] You mean Chuck Rogers is in jail?", thus changing his story about Williams and implicating the defendant.

After interviewing Haberzettle, the four officers talked with Williams. Williams told them that Chuck Rogers was C. D. Rogers, the defendant, and that he was working for the Lone Star Printing Company. One of the detectives knew that C. D. Rogers was an ex-convict who had served at least four prison sentences and who had been convicted of forgery. Williams said that Swallow and Rogers were frequently seen together and that Swallow's place of business, a "beer joint" across the street, was permanently closed and that the landlord could not find Swallow to collect the rent.

The officers then went in search of Swallow. He and his wife were not at home. At this time, between Noon and 12:30 P.M., the officers went to the Lone Star Printing Company, and asked Rogers to accompany them to City Hall.

Rogers was taken directly to the forgery detail. The officers immediately informed him that he was not required to give any information and that anything he might say could be used against him. The detectives questioned him for a period not longer than fifteen minutes during which he admitted having had the check in his possession but insisted that he had won it in a crap game. The Fort Worth police booked him on "suspicion of forgery".

Swallow was apprehended and brought to City Hall between 1:30 and 1:45 P.M. While he was being questioned, the officers, in accordance with Rule 5(a) of the Federal Rules of Criminal Procedure, attempted to locate the United States Commissioner for a hearing. Since the Commissioner did not have regular office hours, it was necessary to reach him through the Marshal's office, a procedure that usually took about two hours. After questioning Swallow, Agent Stewart returned to Rogers who made a signed confession and gave a handwriting specimen. There is no indication that any coercive means, physical or psychological, were employed during this time. At 3:30 that same afternoon, Rogers and Swallow, accompanied by the officers, walked to the Federal Courthouse where they were brought before the Commissioner for their hearing.

Rogers argues that his confession and his handwriting sample should have been suppressed from evidence for two reasons. First, he contends that the period of time between the arrest and the hearing before the Commissioner was an "unnecessary delay" within the meaning of Rule 5(a) and any evidence obtained during this unnecessary portion of the detention should have been excluded by operation of the McNabb-Upshaw-Mallory rule.[1] McNabb v. United States, 1943,

---

1. The considerations supporting the Mc-Nabb rule are discussed fully in Culumbe v. Connecticut, 1961, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037. The rule is defended in Hogan and Snee, The McNabb-Mallory Rule: Its Rise, Rationale and Rescue, 47 Geo.L.J. 1 (1958); The Supervisory Powers of the Federal Courts, 76 Harv.L.Rev. 1656 (1963); and A Memorandum of the Detention of Arrested Persons Accompanying a Statement by the Committee on the Bill of Rights of the American Bar Association on H.R. 3690 (1944), reprinted in 2 Chaffee, Documents on Fundamental Rights 183 (1963); Maguire, Evidence of Guilt, 155–162 (1959). It is attacked in Inbau, Restrictions in the Law of Interrogations and Confessions, 52 NW.U.L.Rev. 77 (1957); Inbau, The Confession Dilemma in the United States

318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Upshaw v. United States, 1948, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100; and Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. Second he contends that the arrest was illegal, because it was made without probable cause, and that this illegality made the confession and the handwriting sample inadmissible.

## II.

As Mr. Justice Black stated in Upshaw: "[A] confession is inadmissible if made during an illegal detention due to failure promptly to carry a prisoner before a committing magistrate, whether or not the 'confession is the result of torture, physical or psychological * *.'" 335 U.S. at 413, 69 S.Ct. at 172, 93 L.Ed. 100. A violation of Rule 5(a) of the Federal Rules of Criminal Procedure[2] therefore renders any evidence obtained during the illegal portion of the detention *per se* inadmissible, without regard to proof of coercion. United States v. Leviton, 2 Cir. 1951, 193 F.2d 848, cert. den'd 1952, 343 U.S. 946, 72 S.Ct. 860, 96 L.Ed. 1350; 2 Morgan, Basic Problems of Evidence, 237 (3rd ed. 1961).

In applying the *per se* test it is necessary to attempt to determine the outer limits of the necessary delay during which interrogation of the prisoner will be permissible. United States v. Walker, 2 Cir. 1949, 176 F.2d 564, cert. den'd

1949, 338 U.S. 891, 70 S.Ct. 239, 94 L. Ed. 547. In this determination, we need not struggle with difficult constitutional questions turning on the existence and degree of physical coercion and the extent of the elusive concept of psychological coercion. Instead, we must consider such facts as the availability of a committing magistrate, the length of the delay before the prisoner is taken before the magistrate, and the police purpose or justification, if any, for the delay.

■ When an arraigning officer is immediately available and detention is prolonged for the purpose of eliciting a confession through police interrogation, Rule 5(a) is violated from the outset. Mallory v. United States, 354 U.S. 449, 455, 77 S.Ct. 1356, 1 L.Ed.2d 1479. When a commissioner is honestly unavailable over a weekend or holiday and the detention stretches for two or three days, there may be no violation of Rule 5(a) even though a confession may have been obtained (unconstitutionally) by brutal physical coercion. United States v. Walker, supra. And while police officers may detain a prisoner incident to a search of the surrounding premises (Williams v. United States, 9 Cir. 1960, 273 F.2d 781, cert. den'd 1960, 362 U.S. 951, 80 S.Ct. 862, 4 L.Ed.2d 868) or while they investigate information freely volunteered by the prisoner (United States v. Leviton), they cannot keep a prisoner in detention while they attempt to find further

Supreme Court, 43 Ill.L.Rev. 442 (1948); Wickersham, The Supreme Court and Federal Criminal Procedure, 44 Cornell L.Q. 14 (1958); and Prearraignment Interrogation and the McNabb-Mallory Miasma; A Proposed Amendment to the Federal Rules of Criminal Procedure, 68 Yale L.J. 1003 (1959).

The Upshaw and Mallory cases did not end the confusion as to whether any element of actual coercion need be shown to invoke the exclusionary rule. We note the divergence of views which can arise from an attempt to apply the Supreme Court rule. See Trilling v. United States, 1958, 104 U.S.App.D.C. 159, 260 F.2d 677. We note also the cases holding that a showing of unreasonable delay is not conclusive. See Dailey v. United States, 5 Cir. 1958, 261 F.2d 870, cert. den'd 1959, 359

U.S. 969, 79 S.Ct. 881, 3 L.Ed.2d 836; Kristiansand v. United States, 5 Cir. 1963, 319 F.2d 416.

2. Rule 5. Proceedings before the Commissioner

"(a) Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith."

evidence to strengthen their case against him. Upshaw v. United States.

█ The cases still allow some interrogation between arrest and arraignment. As a practical matter, if the only justification for delay allowing interrogation were the unavailability of a commissioner, police officers could circumvent the rule by making arrests on weekends or during the night. There must be some play in the system, some flexibility in the rules. Short delays remain permissible. United States v. Vita, 2 Cir. 1961, 294 F.2d 524, cert. den'd 1962, 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788; Patterson v. United States, 5 Cir. 1950, 183 F. 2d 687, cert. den'd 1952, 343 U.S. 951, 72 S.Ct. 1043, 96 L.Ed. 1352.

█ Opponents of the McNabb rule express the fear that early arraignment, with its attendant publicity, will warn confederates of the accused to head for the hills.[3] In the case before us, the first hour of detention following booking was spent in tracking down Swallow; there was already a good indication that Swallow was preparing for flight. We cannot say, given the flexibility implicit in Rule 5(a), that the one hour delay was "unnecessary" for the purpose of applying the McNabb rule. See Holt v. United States, 8 Cir. 1960, 280 F.2d 273, cert. den'd 1961, 365 U.S. 838, 81 S.Ct. 750, 5 L.Ed.2d 747. Once Swallow was in custody, attempts were begun at once to reach the commissioner and the ensuing two or three hour delay was neither unusual nor unnecesary. During this delay it was permissible to interrogate the prisoner as long as none of his rights were abused.

### III.

Second, the appellant contends that his arrest was illegal and that evidence obtained as a result of that arrest was inadmissible.

█ A. The powers of United States Secret Service agents are spelled out in 18 U.S.C.A. § 3056. Agents are authorized to "detect and arrest any person committing any offense against the laws of the United States relating to coins, obligations, and securities of the United States and of foreign governments". A United States Government check is such a security and the forgery of an endorsement on such a check is an offense covered by this section.

█ As with other federal arrests, arrests by Secret Service agents must be under a warrant unless a felony has been committed and there is "reasonable" or "probable" cause for the belief that the arrested person has committed it. United States v. Sheba Bracelets, Inc., 2 Cir. 1957, 248 F.2d 134, 138, cert. den'd 1957, 355 U.S. 904, 78 S.Ct. 330, 2 L.Ed.2d 259; Carroll v. United States, 1924, 267 U.S. 132, 157, 45 S.Ct. 280, 288, 69 L.Ed. 543, 553.

█ In Carroll the Court required that "the facts and circumstances within their [the arresting officers] knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief" that the suspect had committed a crime. 267 U.S. at 162, 45 S.Ct. at 288, 69 L.Ed. 543. Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, adopted this language and Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327, and Ker v. California, 1963, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 cited it with approval. See also United States v. Heitner, 2 Cir. 1945, 149 F.2d 105, cert. den'd 1945, Cryne v. United States, 326 U.S. 727, 66 S.Ct. 33, 90 L.Ed. 432. The later cases emphasize that the information of the arresting officer need not be based on evidence which would be admissible during a trial and need not be so complete as to sustain a conviction.

---

3. See the warning "forceably presented by a high official of the Federal Bureau of Investigation" in A Memorandum on the Detention of Arrested Persons Accompanying a Statement by the Committee on the Bill of Rights of the American Bar Association on H.R. 3690 (1944), reprinted in 2 Chaffee, Documents on Fundamental Human Rights 183, 185 (1963).

It must be from reliable sources however and sustain more than a mere suspicion in the eyes of the arresting officer. Henry v. United States, 1959, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. We note the acceptance and adoption of this definition in this Court in Bourg v. United States, 5 Cir. 1960, 286 F.2d 124; Buford v. United States, 5 Cir. 1962, 308 F.2d 804; Hagans v. United States, 5 Cir. 1963, 315 F.2d 67, cert. den'd, 375 U.S. 826, 84 S.Ct. 68, 11 L.Ed.2d 58; and Monroe v. United States, 5 Cir. 1963, 320 F.2d 277, cert. den'd, 375 U.S. 991, 84 S.Ct. 630, 11 L.Ed.2d 478.

Applying this test to the arrest of Rogers, we find that agent Stewart possessed information sufficient to constitute probable cause for arrest without a warrant. Clearly the crime of forgery had been committed. Fred Haberzettle, known to be reliable, had told Stewart that Swallow had implicated Rogers in the illegal uttering of the check. Detective Sinclair had told Stewart of Rogers's prison record and past conviction for forgery. The closing down of Swallow's "beer joint" and his absence with his wife indicated flight. The information established more than a mere suspicion that Rogers had committed the criminal act.

B. Until Wong Sun v. United States, an illegal arrest did not taint a subsequent confession—unless the arrest and detention were part of a framework of coercion, physical or psychological. See Smith v. United States, 1958, 103 U.S. App.D.C. 48, 254 F.2d 751, 758, cert. den'd 1958, 357 U.S. 937, 78 S.Ct. 1388, 2 L.Ed.2d 1552; United States v. Walker, supra; Brinegar v. United States, 10 Cir. 1948, 165 F.2d 512, aff'd, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. Here, no such framework of coercion has been established; indeed no coercion is anywhere indicated.

With Wong Sun the Supreme Court entered once again the bloody war fought over the exclusion of illegally obtained evidence. Now, a year later, the smoke has still not entirely cleared from this newest battle and it is too early to tell whether the latest declaration will bring on the "fresh wave of reconsideration, controversy, and ultimate changes of front" which Professor Maguire expects.[4] In Wong Sun the Supreme Court held that oral statements and written confessions are not to be treated differently from other, tangible pieces of evidence obtained as a result of searches and seizures accompanying an illegal arrest. Using the terminology of the "fruit of the poisonous tree" approach (Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319) the Court stated the controlling question to be:

" 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d 441.

The arrests in Wong Sun were found to be without probable cause. A statement made by defendant Blackie Toy contemporaneous with the arrest which followed a forced entry into the Toy residence was found to be so intimately bound up with the conditions and circumstances of the arrest as not to be an act of a wholly free will. The contention that Toy's statement was freely given was said to take

"insufficient account of the *circumstances*. Six or seven officers had broken the door and followed on Toy's heels into the bedroom where his wife and child were sleeping. He had been almost immediately handcuffed and arrested. *Under such circumstances* it is unreasonable to infer that Toy's response was sufficiently an act of free will to

4. Maguire, Evidence of Guilt 226 (1959).

purge the primary taint of the unlawful invasion.[12]" 371 U.S. at 486, 83 S.Ct. at 416, 9 L.Ed.2d 441 (Emphasis added.)

On the other hand, Wong Sun following his illegal arrest was released on his own recognizance. He returned to the police a few days later to make a statement the admissibility of which was being contested. The connection between the arrest and the evidence "had 'become so attenuated as to dissipate the taint.' Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307." 371 U.S. at 491, 83 S.Ct. at 419, 9 L.Ed.2d 441.

There is no doubt that in Wong Sun the Supreme Court is no longer speaking the language of coerced confessions and the Fifth Amendment. Nevertheless, in spite of the oblique reference to the McNabb rule in puzzling Footnote No. 12, we think it unlikely that the Court has tacitly established another exclusionary rule based on its supervisory powers.[5] Rather, we find that Wong Sun views a confession or statement taken following an illegal arrest as under the protections offered by the Fourth Amendment *as well as* those of the Fifth Amendment. See 31 Geo.Wash.L.Rev. 851 (1963). Just as evidence taken during or directly resulting from an illegal arrest is inadmissible under the doctrine of Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, Silverthorne Lumber Co. v.

United States, and Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, so are oral statements by persons arrested (or anyone else for that matter) which are so inextricably bound up with an illegal arrest so as to become "tainted".

Papers, syringes, bottles and other pieces of tangible evidence can be traced to their source, and it is possible for a court to see exactly what information and what circumstances lead the police to discover them. An oral statement is wholly different. In Wong Sun, were it not for the arrest, it is clear that no statement would have been made. But the Court found it improper to "hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." 371 U.S. at 487–488, 83 S.Ct. at 417, 9 L.Ed.2d 441. The Court seemed to indicate the necessity for the intervention of a clear act of free will on the part of the defendant in order to purge the evidence of its stigma. At first blush this would appear to require only a passing of sufficient time between the arrest and the statement for the defendant to clear and arrange his mind. It is hard to tell whether this is borne out or repudiated by the inscrutable treatment of Traub v. Connecticut, 1962, 150 Conn. 169, 187 A.2d 230, vacated and remanded, 1963, 374 U.S. 493, 83 S.Ct. 1899, 10 L.Ed.2d 1048.

5. Footnote 12:
"See Lord Devlin's comment: 'It is probable that even today, when there is much less ignorance about these matters than formerly, there is still a general belief that you must answer all questions put to you by a policeman, or at least that it will be the worse for you if you do not.' Devlin, The Criminal Prosecution in England (1958), 32. Even in the absence of such oppressive circumstances, and where an exclusionary rule rests principally on nonconstitutional grounds, we have sometimes refused to differentiate between voluntary and involuntary declarations. See Hogan and Snee, The McNabb-Mallory Rule: Its Rise, Rationale and Rescue, 47 Geo.L.J. 1, 26–27 (1958). For illustrative situations where a voluntary act of

the accused has been held insufficient to cure the otherwise unlawful acquisition of evidence, see Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465 (holding inadmissible fingerprints made by defendant after unlawful arrest); United States v. Watson, D.C., 189 F.Supp. 776 (excluding narcotics voluntarily surrendered by accused in the course of an unauthorized search). The Ninth Circuit Court of Appeals from which the instant case comes has recognized in an analogous context, that 'all declarations and statements under the compulsion of the things so seized, are affected by the vice of primary illegality. * * *' Takahashi v. United States [9 Cir.], 143 F.2d 118, 122."

■ Taking into account the freedom from "oppressive circumstances" surrounding the arrest of Rogers, the three hour delay between arrest and statement, the noncontinuous interrogation, and Rogers's intervening refusal to confess, we see no violation of the Fourth Amendment even if the arrest must be considered illegal. Although the police did exploit the circumstances of the arrest to the extent of interrogating their prisoner, there was sufficient evidence of freedom of mind to conclude that any illegality involved in the arrest could not have infected the later statements. See United States v. Burke, D.C.Mass.1963, 215 F.Supp. 508, 511.

C. The defendant would have this Court extend the McNabb *per se* rule to cover all illegal detentions rather than just those resulting from a violation of Rule 5(a). The law is expanding in that direction but, in our opinion, has not yet reached that stage of development; the controlling purpose of the McNabb rule was the enforcement of speedy arraignment. We recognize that the McNabb rule has sometimes been stated so broadly as to encompass any illegal Federal detention. Bynum v. United States, 1958, 104 U.S.App.D.C. 368, 262 F.2d 465. We recognize too that there is a valid supervisory interest in deterring improper Federal arrests. We note that an illegal arrest in this case would be a Federal violation so as to bring this case within the scope of the sweeping and, perhaps, inadvisable negative inference which can be drawn from Mr. Justice Jackson's opinion in On Lee v. United States, 1952, 343 U.S. 747, 754, 72 S.Ct 967, 972, 96 L. Ed. 1270, 1276. Nevertheless, in view of the protracted controversy over the prescribed limits of McNabb, and considering all of the facts before us, we conclude that this is not the case to extend the scope of the rule beyond its previously defined limits.[6]

IV.

■ There is one final question. The defendant maintains that he was unfairly prejudiced by being saddled with the burden of proof during his hearing on his motion to suppress evidence. During the hearing the judge stated it was his opinion that defendant, as the moving party, bore the burden of proof. At the end of the hearing, the district judge stated that he was willing to withdraw his opinion on burden of proof, and, giving the defendant the benefit of the doubt, he still ruled against the motion to suppress. We see no reversible error.

As is true in so many other situations, the burdens of persuasion and of producing evidence in motions for the suppression of evidence have been badly confused. The burden of persuasion is properly and permanently placed upon the shoulders of the moving party. When a criminal defendant claims the right to protection under an exclusionary rule of evidence, it is his task to prove his case. Nardone v. United States, 1939, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; Joseph v. United States, 5 Cir. 1956, 239 F.2d 524; Wilson v. United States, 10 Cir. 1955, 218 F.2d 754; United States v. Walker, supra; United States v. Okawa, D.C.Haw. 1961, 26 F.R.D. 384. In the areas of coerced confessions and illegal searches and seizures this rule is reinforced by the usual presumption of proper police conduct. 1 Wharton's Criminal Evidence 238 (1955); 22A C.J.S. Criminal Law § 589(1), p. 355.

The moving party must also bear the burden of producing evidence. If the essential evidence is not brought to light the motion must fail. It is true, however, that in asserting an illegal arrest the defendant must satisfy this burden by showing that the arrest was made without a warrant. While an arrest pursuant to a warrant is prima facie evidence of probable cause, Chin Kay v. United States, 9 Cir. 1962, 311 F.2d 317,

---

6. But see Broeder, Wong Sun v. United States: A Study in Faith and Hope, 42 Neb.L.Rev. 483 (1963).

321; Batten v. United States, 5 Cir. 1951, 188 F.2d 75, 77, the prosecutor should be forced to come forward with evidence of probable cause in the absence of a warrant. Plazola v. United States, 9 Cir. 1961, 291 F.2d 56, 58; Wrightson v. United States, 1951, 95 U.S.App.D.C. 390, 222 F.2d 556. Without such a rule there would be little reason for law enforcement agencies to bother with the formality of a warrant. Furthermore, the evidence comprising probable cause is particularly within the knowledge and control of the arresting agencies.

In the case before us the defendant had the burden of persuasion. He was not prejudiced by the district judge's treatment to the contrary. The burden of producing evidence is never crucial unless certain necessary facts in a case are not aired. Here all of the salient facts were aired. Few were even in dispute. The defendant, therefore, was not prejudiced by the order in which the evidence was presented. And the district judge allowed defendant's counsel to examine all of the witnesses as hostile. There is no prejudicial error in the record.

The judgment is affirmed.