**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Linda Sue BROWN, Defendant-Appellant.**

**No. 71–1006.**

United States Court of Appeals,
Fifth Circuit.

Oct. 6, 1971.

Rehearing Denied April 25, 1972.

Bill (R. W.) Glenn, Jr., Dallas, Tex. (Court Appointed), for defendant-appellant.

Eldon B. Mahon, U. S. Atty., Charles D. Cabaniss, Frank D. McCown, William F. Sanderson, Jr., Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before COLEMAN, SIMPSON and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Linda Sue Brown appeals from her conviction for possessing seven $100 counterfeit Federal Reserve Notes in violation of 18 U.S.C. § 472. Her principal arguments relate to a confession which she claims was obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Rule 5(a) of the Federal Rules of Criminal Procedure. We affirm.

On May 28, 1970, the defendant attempted to rent a Cadillac in Dallas, Texas, with a BankAmericard. The rental attendant was suspicious because the age (43) listed on the identification submitted by the defendant did not appear correct (defendant was 28), and the defendant seemed nervous, and wore sunglasses although it was almost dark. The attendant called the local Bank-

Americard office to check the card. A return call was received from Bank-Americard in Memphis, Tennessee, advising that the card was stolen. The attendant telephoned the Dallas police and upon an officer's arrival, the attendant told him what had occurred. The officer then spoke with the BankAmericard official in Memphis and checked the number of the credit card presented by defendant with the number of the card listed as stolen. The officer asked Brown for identification and was given a driver's license which contained information that did not correspond with defendant's age or physical description. Brown was placed under arrest and her purse was searched. In addition to a gun, the police found the seven counterfeit bills which were the subject of this conviction.

Although the defendant contends that the arrest was invalid because not based upon probable cause, this contention is without merit. Clearly, based upon "the practical considerations of everyday life," the police officer could reasonably believe that the defendant had committed or was committing a violation of Texas law relative to improper possession or use of credit cards.[1] Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

After defendant's arrest she was taken to the Dallas City jail where around 10:00 P.M. the defendant was advised of her *Miranda* rights and briefly interrogated about state offenses. At 11:30 she was taken before a state magistrate who advised her of her constitutional rights. The next day, May 29, she was again taken before a state magistrate and warned of her rights.

Also on May 29, Brown was visited by two United States Secret Service agents. At that time the defendant was advised of her rights by means of a standard warning and waiver form, which she read but did not sign. Brown asked to talk with a particular attorney and the agents attempted to call him. When the attorney was not reached, a message was left to call the defendant or one of the agents, or both. After that Brown was asked about counterfeit money and she revealed who had given her the money, but denied knowing it was counterfeit. This conversation lasted fifteen to twenty minutes and there was no testimony concerning it at the trial.[2]

Because of the Memorial Day weekend, Brown was not visited again until June 1. On that day the state charges were dropped and the defendant was turned over to the Secret Service. She was taken to their office where they arrived at 9:45 A.M. A United States Commissioner was not present but one was expected at 1:00 P.M. Through the United States Marshal's office, the agents attempted to reach the Commissioner. Upon arrival, Brown was again advised of her rights by use of the standard form, which she read, but did not sign. The agents explained procedures

---

1. State law governs the validity of the arrest. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). As to arrest powers of state officers, see Vernon's Ann.C.C.P. Art. §§ 14.01, 14.03, 14.04. For credit card offenses see Vernon's Tex.Penal Code, § 1555c.

2. Defendant claims that her statement concerning these matters was obtained in violation of Miranda v. Arizona, *supra*, and also contends that on prior occasions the warnings were not given, or were inadequate. However, since no statements obtained as a result of any prior interviews were introduced in evidence, the *Miranda*

requirements are not relevant. Allen v. United States, 384 F.2d 926 (5th Cir. 1967). It is true that the agent testified that at the May 29 interview defendant stated she was 28 years old and had completed the 11th grade in school. There was independent testimony from defendant's aunt as to defendant's age and background. The testimony of age and education was relevant only to the question of voluntariness of the confession and its significance was limited. Therefore, even if there was a technical violation of *Miranda* in admitting the testimony of age and education, it was harmless error. United States v. Smith, 418 F.2d 223 (6th Cir. 1969).

relating to filing of the counterfeiting charge, arraignment, posting of bond and appointment of a lawyer. Within five or six minutes of her arrival, Brown asked to speak with the attorney who had been called on May 29, and who had not returned the call. The attorney was contacted and Brown spoke to him for fifteen to twenty minutes. Brown subsequently told the agents that the attorney had advised her to remain silent. After the conversation with the lawyer, the agents told her that it would be better if she got the matter "off her chest." She indicated she had lost confidence in the attorney because he had not responded to the previous call and proceeded to make a full confession in narrative form. After completing her story, an administrative aide was called in and the story was repeated, reduced to typewritten form and signed by the defendant. This was completed at approximately 2:00 P.M. In the meantime, the agents were still attempting to reach the Commissioner through the United States Marshal's office. The Commissioner did not appear until 4:00 P.M. at which time the defendant was taken before him.

## I. *Miranda*

■ Since the defendant was fully and correctly advised of her privilege against self-incrimination and her right to counsel on five separate occasions, twice by state magistrates, the only question is whether she knowingly and intelligently waived those rights. Where, as here, a statement is obtained without a lawyer present a heavy burden rests on the government to demonstrate a knowing and intelligent waiver. Miranda v. Arizona, 384 U.S. at 475, 86 S.Ct. at 1628. This court has stated:

"To be valid, a waiver must be made voluntarily, United States v. Ogle, 5 Cir., 1969, 418 F.2d 238, and may not

be presumed 'simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained.' Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628 [16 L.Ed.2d 694] (1966). An express statement that the individual does not want a lawyer is not required, however, to show that the individual waived his right to have one present. *See* Bond v. United States, 10 Cir., 1968, 397 F.2d 162, 165. All that the prosecution must show is that the defendant was effectively advised of his rights and that he then intelligently and understandingly declined to exercise them. *See* Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962)." United States v. Montos, 421 F.2d 215 (5th Cir. 1970).

We hold that the government has shown that the defendant deliberately waived her right to counsel and her privilege against self-incrimination.

■ As to her right to counsel, it is clear that Brown understood that right for she exercised it prior to her confession. On each occasion that Brown was interrogated by the Secret Service she refused to execute the waiver form and requested that an attorney of her choice be called. After the defendant had talked with an attorney and without a further request for counsel, the defendant confessed.[3] In the circumstances of this case a failure to invoke the right to counsel, which had just been exercised, demonstrates a waiver of that right. United States v. Green, 433 F.2d 946 (5th Cir. 1970).

■ The defendant also waived her privilege against self-incrimination. In addition to the repeated warnings of her rights, the attorney advised Brown to remain silent. Notwithstanding the warnings and advice, the defendant gave

---

3. The attorney was not retained by the defendant and made no appearance on her behalf. Even if the agents knew or believed the attorney did represent defend-ant, his presence could be waived. Wilson v. United States, 398 F.2d 331 (5th Cir. 1968); Coughlan v. United States, 391 F.2d 371 (9th Cir. 1968).

a complete statement. The statement was given with only the minimal prompting by the agent that it would be better for defendant if she got the matter off her chest. The statement was given within twenty to thirty minutes after arrival at the Secret Service office and most of that time was occupied by defendant's telephone conversation with the attorney. Defendant narrated her activities and admitted offenses which were remote from Dallas and the local investigation. These circumstances all demonstrate a knowing and intelligent waiver of her privilege against self-incrimination. United States v. Mix, 5th Cir. 1971, 446 F.2d 615; United States v. Daniel, 441 F.2d 374 (5th Cir. 1971).

## II. *McNabb-Mallory*

The defendant also contends that she was not taken before a United States Commissioner without unnecessary delay as required by Rule 5(a),[4] F.R.Cr.P., and that therefore under McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed.2d 819 (1943) and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), which exclude evidence obtained during a period when Rule 5(a) is being violated, the confession was inadmissible. The burden of establishing a Rule 5(a) violation is on the defendant. Barnett v. United States, 384 F.2d 848 (5th Cir. 1967).

Where, as here, the period of state custody precedes a federal arrest, the claim of unnecessary delay is tested from the beginning of federal detention, unless collusion between state and federal authorities is shown. Lovelace v. United States, 357 F.2d 306 (5th Cir. 1966). No collusion is claimed or shown

here. United States v. Gunn, 428 F.2d 1057 (5th Cir. 1970). Further, any period of illegal detention which occurs after the challenged evidence is obtained is not considered in determining whether the evidence should be excluded. United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944); Barnett v. United States, *supra*.

Rule 5(a) does not prohibit all delays, but only unnecessary ones. In determining whether a delay is unnecessary, various factors such as the availability of committing magistrate, the length of delay before the prisoner is taken before the magistrate and the police purpose or justification, if any, for the delay are considered. Rogers v. United States, 330 F.2d 535 (5th Cir. 1964).

Here the unavailability of the Commissioner was the cause of the delay. The Secret Service agents contacted the United States Marshal's office several times throughout the morning and afternoon. Although the Commissioner was expected to arrive at 1:00 P.M., he was delayed and did not appear until 4:00 P.M., at which time defendant was taken before him.

In the meantime, defendant had orally confessed shortly after being taken into federal custody. Although the statement was thereafter prepared in typewritten form, this was not during a period of illegal detention since the statement was a repetition of her oral confession and the arrival of the Commissioner was still awaited. United States v. Curry, 358 F.2d 904 (2d Cir. 1966).

In Rogers v. United States, *supra*, there was an hour delay before the agents attempted to reach a United States Commissioner and a two or three

---

4. Rule 5. Proceedings before the Commissioner

    (a) Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith.

hour delay before his appearance. In holding that it was permissible to interrogate the prisoner during the delay, as long as none of his rights were abused, this court said:

"The cases still allow some interrogation between arrest and arraignment. As a practical matter, if the only justification for delay allowing interrogation were the unavailability of a commissioner, police officers could circumvent the rule by making arrests on weekends or during the night. There must be some play in the system, some flexibility in the rules. Short delays remain permissible." 330 F.2d at 539.

The short delay in this case was not unnecessary.[5]

### III. *Mississippi Conviction*

While awaiting trial on the instant charge, the defendant was delivered to Mississippi state authorities for trial for armed robbery, of which she was convicted. Defendant complains that she was deprived of due process by Mississippi and seeks relief from the alleged deprivation here. Such a contention must first be addressed to the Mississippi state courts, see 28 U.S.C. § 2254, and certainly cannot be considered on a direct appeal of a federal counterfeiting conviction. In addition, we find that no prejudice accrued to defendant in her federal trial by virtue of the Mississippi proceeding.

Affirmed.

## ON PETITION FOR REHEARING

### PER CURIAM:

Appellant urges that her written confession should not have been admitted into evidence because it was obtained in violation of the Supreme Court's mandate in Miranda v. Arizona, 384 U.S. 436, 473, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966):

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise."

The record of this case shows that the defendant did not indicate in any manner that she wished the questioning to cease. To the contrary, there was testimony both at trial and at the hearing on the motion to suppress that the defendant affirmatively expressed a desire to tell her story to the FBI agents. Under these circumstances, the *Miranda* rule was not violated and the trial court was correct in admitting defendant's statement into evidence.

The petition for rehearing is denied.

---

5. Since we find no unnecessary delay, it is not necessary to consider the government's alternative argument that the statement was obtained within six hours after arrest and is admissible by virtue of 18 U.S.C. § 3501(c), and the defendant's rejoinder that said statute is unconstitutional.