The STATE of Texas, Appellant,

v.

**Paul David ROBINSON, Appellee.**

**No. 10–08–00185–CR.**

Court of Appeals of Texas, Waco.

June 16, 2010.

Discretionary Review Granted Oct. 20, 2010.

---

David E. Moore, Groesbeck, for Appellant.

Christopher E. Martin, County Atty. for Freestone County, Fairfield, for Appellee.

Before Chief Justice GRAY, Justice REYNA, and Justice DAVIS.

## OPINION

REX D. DAVIS, Justice.

Paul Robinson, charged with driving while intoxicated (second offense), filed a motion to suppress blood-test evidence, which the trial court granted. The State appeals, asserting in one issue that the trial court erred in granting the motion. We will affirm.

### Jurisdiction

■ We first address Robinson's assertion that we lack jurisdiction because the State's notice of appeal was untimely. The trial court orally granted the motion to suppress at the conclusion of a May 14, 2008 hearing. The trial judge then signed an order that states:

> On *May 14* [italics in handwriting], 2008, came on to be considered Paul David Robinson's Motion to Suppress Blood Test," and said motion is hereby
>
> (Granted)   ~~(Denied)~~

The order is signed in handwriting by the trial judge, but there is no signing date. The clerk's file stamp shows that the order was filed on May 27, 2008, at 4:30 p.m.

The State's first notice of appeal was filed on May 22. It is signed by an assistant county attorney, and it lacks the prosecuting attorney's certification "to the trial

court that the appeal is not taken for the purpose of delay and that the evidence, confession or admission is of substantial importance in the case." TEX.CODE CRIM. PROC. ANN. art. 44.01(a)(5) (Vernon Supp. 2009); *see also id.* art. 44.01(i) (excluding "assistant prosecuting attorney" as a "prosecuting attorney").

A second order much like the first is also in the record, but it reads:

> On *May 14 27th* [italics in handwriting], 2008, came on to be considered Paul David Robinson's Motion to Suppress Blood Test," and said motion is hereby
>
> (Granted) ~~(Denied)~~

And instead of a handwritten signature by the trial judge, it has an obviously stamped signature of the judge. Moreover, the clerk's file stamp is different, being located on a different part of the order and signed by a different clerk, yet it also reflects a filing date and time of May 27 at 4:30 p.m.

Thereafter, a second notice of appeal was filed on May 30. It is signed by the county attorney and has the certification required by article 44.01(a)(5).

Robinson argues that the order was signed on May 14 and that the May 30 notice of appeal is untimely because it was not filed within fifteen days. However, in 2007 article 44.01 was amended to increase the time period for a State's notice of appeal from fifteen to twenty days. *See* TEX.CODE CRIM. PROC. ANN. art. 44.01(d); Act of September 1, 2007, 80th Leg., R.S., ch. 1038, §§ 2, 4, 2007 Tex. Gen. Laws 3592. Because a proper notice of appeal was filed within twenty days of May 14, we have jurisdiction.

### Suppression

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State,* 221 S.W.3d 666, 673 (Tex.Crim.App.

2007); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Best v. State,* 118 S.W.3d 857, 861 (Tex. App.-Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State,* 214 S.W.3d 17, 24–25 (Tex.Crim. App.2007); *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000), *modified on other grounds by State v. Cullen,* 195 S.W.3d 696 (Tex.Crim.App.2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador,* 221 S.W.3d at 673; *Montanez v. State,* 195 S.W.3d 101, 108–09 (Tex.Crim.App.2006); *Johnson v. State,* 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador,* 221 S.W.3d at 673; *Estrada v. State,* 154 S.W.3d 604, 607 (Tex.Crim. App.2005); *Johnson,* 68 S.W.3d at 652–53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede,* 214 S.W.3d at 24; *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App.2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly,* 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings

that are supported by the record are also dispositive of the legal ruling. *Id.* at 819.

The trial "judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted. This is so because it is the trial court that observes first hand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record." *Ross*, 32 S.W.3d at 855 (footnoted citations omitted).

One of the grounds in the motion to suppress is that the person who withdrew Robinson's blood specimen was not a qualified technician under the law.[1] *See* TEX. TRANSP. CODE ANN. § 724.017(a) (Vernon Supp.2009) ("Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter."). The trial court issued a finding "that the evidence did not prove the blood was taken by a person listed in the statute as qualified under the law to withdraw the specimen."

■ Robinson had the initial burden to produce evidence that the statute was violated and that the evidence should be excluded, and upon meeting that initial burden, the burden of proof shifted to the State. *See State v. Kelly*, 204 S.W.3d 808, 819 n. 22 (Tex.Crim.App.2006); *Wilson v. State*, 277 S.W.3d 446, 448 (Tex.App.-San Antonio 2008) ("It is 'settled law that the burden of proof is initially on the defendant to raise the [article 38.23] exclusionary issue by producing evidence of a statutory violation, and that this burden then shifts to the State to prove compliance.' "),

*aff'd*, 311 S.W.3d 452 (Tex.Crim.App.2010) (quoting *Pham v. State*, 175 S.W.3d 767, 772 (Tex.Crim.App.2005)); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005) ("[n]o evidence obtained by an officer ... in violation of ... [the] laws of the State of Texas ... shall be admitted in evidence against the accused on the trial of any criminal case"). The party with the burden of proof assumes the risk of non-persuasion. *Kelly*, 204 S.W.3d at 819.

The following colloquy occurred at the beginning of the suppression hearing:

> THE COURT: ... And we are here on a Motion to Suppress the blood test.... Since it's your motion, will you—
>
> [DEFENSE]: Yes, ma'am.
>
> THE COURT: —proceed.
>
> [DEFENSE]: I'll call Deputy Burcher [*sic*].
>
> [STATE]: Well, Judge, the proper way to proceed on this, since it's—and we'll stipulate that it's without a warrant, and then it's our burden to prove that—I mean, we—we see what the motion is so I think it's—I think we should actually go first, but—
>
> [DEFENSE]: And I have no objection to that, Your Honor. The facts are going to come out one way or the other.
>
> THE COURT: All right. All right. I just thought that since it was your motion, that—
>
> [DEFENSE]: Yes, ma'am. If they stipulate it was a warrantless arrest—
>
> [STATE]: We'll stipulate there was no warrant.

---

1. Other suppression grounds in the motion are that the warrantless arrest lacked probable cause and that Robinson did not consent to the blood draw. The trial court issued a finding that "the Court heard evidence in this cause and did not find grounds for suppression based on the warrantless arrest or on the voluntariness of defendant's consent in the taking of the blood specimen." Robinson has not appealed those findings, and they are thus not before us.

[DEFENSE]: Then as long as they stipulate to that, then I think the burden shifts.

THE COURT: All right. They're stipulating to that then. All right. Then the State will go first.

[STATE]: Okay. We'll call Deputy Burcher [*sic*] too.[2]

The only witness at the suppression hearing was former Freestone County Deputy Josh Vercher, who testified he was patrolling on Highway 84 around 1:10 a.m. when a vehicle headed toward him swerved into his lane, causing him to have to take evasive action. Vercher turned around and stopped the vehicle, which was being driven by Robinson. After conducting field sobriety tests, Vercher arrested Robinson for DWI and took him to the Freestone County Jail.

Vercher said that Robinson agreed to a blood sample, so he took him to East Texas Medical Center in Fairfield where Robinson's blood was drawn: "We handcuffed him back up, drove him to the hospital, and took a specimen of his blood and then brought him back to the jail and booked him back in." Vercher then mailed the sample to the DPS in Austin, and the report showed blood alcohol of .14 percent.

The State passed the witness, and on cross-examination, a videotape of the stop was shown, and it contradicted some of Vercher's testimony. For example, the officer initially said he did not leave Robinson at the jail for two to three hours before the blood draw to respond to a home intrusion where he made several arrests, but the videotape showed otherwise.

Vercher also initially said that during the stop Robinson consented to a breath test, but he acknowledged that Robinson refused a breath test on the videotape. Vercher agreed that his initial testimony, his written report, and the videotape all conflict.

As for the person who drew Robinson's blood, Vercher said he did not know who the person was or remember what the person looked like. It was his first time to take a suspect to a hospital to have blood drawn. He did not write down the person's name, and he does not remember which arm the blood was drawn from, who prepared the site for the draw, or how the site was prepared.

■ At this point, we believe that Robinson met his initial burden to produce evidence to support the trial court's finding that the person who withdrew Robinson's blood specimen was not a qualified technician under the law. The burden of proof then formally shifted to the State to show that section 724.017(a) was complied with.

On re-direct examination, Vercher said that a "nurse" in the emergency room took Robinson's blood sample. But on re-cross-examination, Vercher then admitted that his report states that an "emergency room technician" signed and sealed Robinson's blood specimen. In response to whether that emergency room technician was the same person as the "nurse" who took the blood or was just someone who witnessed it, Vercher said nonresponsively, "The same guy that took the blood has to sign off and seal it and put it back in the vile

---

**2.** The above procedural colloquy has resulted in the amplified and concerned dissent that the burden of proof will hereafter be misplaced in this arena of Texas jurisprudence. The State ultimately chose to go forward and the evidence was fully developed. Significantly, the State accepted the burden of proof in the trial court, and in this appeal, the State does not argue that the burden of proof was misplaced.

Because the dissent has been designated for publication, this opinion is also published for clarity and context.

[*sic*]." Vercher did not recall whether the person did anything with the tube of blood, such as swirling it five times.

The State argues that the trial court erred in granting the motion to suppress because the testimony of the nurse who withdrew Robinson's blood was not required. The State cites cases holding that the person who drew the blood need not testify and that the person's missing testimony goes to the weight of the evidence, but not to its admissibility. *See, e.g., Yeary v. State,* 734 S.W.2d 766, 769 (Tex. App.-Fort Worth 1987, no pet.); *Beck v. State,* 651 S.W.2d 827, 829 (Tex.App.-Houston [1st Dist.] 1983, no pet.). Robinson replies that the trial court granted the motion to suppress not because the nurse did not testify, but because Vercher's testimony was not sufficiently credible for the trial court to have believed his testimony that a nurse drew Robinson's blood. Given Vercher's testimony on cross-examination and the trial judge's comments at the conclusion of the hearing, Robinson's position is much more persuasive.

During closing argument on the motion to suppress, the following exchange occurred between the trial judge and the assistant county attorney:

> THE COURT: But the State to me has not proved, has not met the burden to prove who took the blood and that they were a qualified person under the statute.
>
> [STATE]: Judge if—if—under the statute I think it lists—
>
> THE COURT: It does.
>
> [STATE]: —the medical personnel. You don't have to name the name.
>
> THE COURT: It doesn't, but I haven't—the State has not met the burden that it was one of these persons that took it.
>
> . . .

> THE COURT: Well, based on the testimony, I am going to suppress the blood test.

■ Based on the trial judge's statements and the record as a whole, we disagree with the State that the motion to suppress was granted only because the alleged nurse did not testify. It instead appears that the trial court did not believe the State met its burden of proof because Vercher's testimony about who drew the blood was inconsistent, not credible, or both. Because we must almost totally defer to the trial court's evaluation of Vercher's credibility and demeanor, and the State assumed the risk of nonpersuasion, we cannot say that the trial court erred or abused its discretion in granting the motion to suppress. We overrule the State's issue and affirm the trial court's order.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

This may be the most important decision we make this year. It is almost certainly the most important decision in a criminal case this year. Although it does not affect my opinion, the Court's holding could have significant adverse economic consequences on the efficient prosecution of any charge for driving-while-intoxicated in which the State is relying on blood-alcohol-content evidence.

The Court errs, as did the trial court, in placing the burden of proof on the State to prove that the blood draw was taken in compliance with the relevant statute. It is solely this error, the placement of the burden of proof, that has resulted in the erroneous suppression of the blood evidence. I respectfully dissent to the Court's opinion and judgment.

BACKGROUND

Robinson was arrested for driving under the influence, better known as driving

while intoxicated—DWI. He filed a motion to suppress the blood-alcohol-content evidence by pretrial motion and hearing. He raised a number of grounds upon which the blood evidence should be suppressed, including that it was without a warrant, was drawn without his consent, and that it was not taken in accordance with Texas Transportation Code section 724.017 and should, therefore, be suppressed under Texas Code of Criminal Procedure article 38.23.

## The Hearing

The hearing was held before the county judge who would not be expected to be fully in tune with the niceties of a shifting of the burden of proof, burden of production or going forward with evidence, or, ultimately, the burden of persuasion. The trial court, understandably, looked to and expected the movant to go first at the hearing. It was his motion.

At this point, at the very beginning of the hearing on the motion to suppress, there was some discussion of who should go first and which party had what burdens.

No one, including me, disputes that Robinson had the burden of proving a warrantless seizure of evidence. No one, including me, contends the blood sample was taken pursuant to a warrant and the State stipulated to that fact and proceeded to prove that the defendant consented to the blood draw. And it was then that the hearing became a legal jigsaw puzzle, because the legal issues involved, and specifically who had the burden of proof on various issues, allegations, and defenses, became confused.

The State called the arresting officer. He recounted, as best he could recall, the events of the night of the arrest. His testimony on direct appears to primarily have been to establish that Robinson consented to the blood draw, thus proving a valid seizure in the absence of a warrant. But his testimony also spilled over into another issue—whether the blood draw was performed in compliance with Texas Transportation Code section 724.017. On cross-examination, Robinson explored a number of what may initially appear to be inconsistencies between the officer's usual procedures, his recollection of the specific event, his report of the event, and the in-car video/audio of the events of that night. In the course of cross-examination, the officer was interrogated about who took the blood draw and the manner of having taken it. The officer, noting it had been a very long time since the events of that night and he had worked for two other departments since then, testified he could not recall many of the specific facts; for example, if the blood was taken from the left or right arm, and whether the tube was swirled five times after the blood draw.

Additionally, the officer was asked many of the questions relevant to retrograde extrapolation of blood alcohol content to determine what the blood alcohol content would have been at the time of arrest. It was evident that Robinson's trial counsel was well versed on the issues and obtained some responses that may make it difficult for the State to effectively use the blood alcohol concentration level at trial.

But as the State's attorney argued to the trial court, this hearing was about suppression of the evidence, not the weight it may ultimately have when admitted.

After the officer was through testifying, the hearing devolved into a convoluted discussion about what issues were proper for this hearing, whether the hearing needed to be continued until the testimony of another witness could be obtained, or whether there was a need to call the other witness in light of the relevant issues.

During this discussion, the trial court made the following statement:

THE COURT: We are here on a Motion to Suppress, and the—there are numerous issues that have been addressed. Probably the most compelling to me at this point, though, is that the State must prove who took the blood and whether it was a qualified person under the statute to take the blood, and that to me is the most compelling issue that we would be looking at at this point. These others are things certainly that could be argued if in fact it got to that point. But the State to me has not proved, has not met the burden to prove who took the blood and that they were a qualified person under the statute.

Not surprisingly, the hearing concluded shortly thereafter with no clarification of the burden of proof. It is clear that the trial court placed the burden of proof to show that the blood draw was performed in compliance with the statute, Texas Transportation Code section 724.017, on the State, failing to prove such the trial court was going to suppress the blood evidence. Specifically, the trial court was focused on the fact that the State had not proved to the court's satisfaction that the person who drew the blood was qualified as required by the statute, Texas Transportation Code section 724.017.

The State proceeded to argue that its proof on the identity of the person was adequate. The trial court, however, was not persuaded. After a very brief discussion, the hearing concluded, as follows, interrupted only by the noise of a passing truck:

THE COURT: Well, based on the testimony, I am going to suppress the blood test. However, I do not grant any of the other.

MR. MOORE: Your Honor, I'm sorry, the truck, I didn't hear the last thing you said?

THE COURT: I am not going to grant the other parts of the Motion to Suppress as to the—saying that it was an illegal arrest and that therefore all of the fruits would be excluded.

MR. MOORE: Yes, ma'am.

THE COURT: I'm not going to grant that.

MR. MOORE: Yes, ma'am, I understand. I'll prepare an order for the Court.

### ORDER

The trial court's order is as follows:

On May 14, 2008, came on to be considered Paul David Robinson's Motion to Suppress Blood Test, and said motion is hereby

(Granted) ~~(Denied)~~

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Upon proper request, the trial court signed findings and conclusions as follows:

In response to the request of the State of Texas, by and through the Assistant County Attorney in the above styled and numbered cause, the Court makes and files the following as original Findings of Fact and Conclusions of Law:

*Findings of Fact*

1. That Paul David Robinson is the Movant in a Motion to Suppress and that he appeared in person and by attorney, David Moore, and announced ready for hearing and that the State of Texas is the Respondent and appeared in person by the Assistant County Attorney, Matt Boyle, and announced ready for hearing.

2. That hearing was had on the Motion to Suppress Blood Test on the 14th day of May, 2008.

3. That the Court heard evidence in this cause and did not find grounds for suppression based on the warrantless arrest or on the voluntariness of defendant's consent in the taking of the blood specimen..[sic]

4. The Court did find that the evidence did not prove the blood was taken by a person listed in the statute as qualified under the law to withdraw the specimen.

5. Any finding of fact that is a conclusion of law shall be deemed a conclusion of law.

*Conclusions of Law*

IT IS THEREFORE concluded based on the evidence presented that the Motion to Suppress is granted.

DATED the 2nd day of July, 2008.

### ANALYSIS

The blood evidence was suppressed because the trial court erroneously believed the State had the burden to prove "the blood was taken by a person listed in the statute as qualified under the law to withdraw the specimen." Unfortunately, the two potentially relevant findings, 3 and 4, are both stated in the negative; in essence, what the trial court did not find was proved by the evidence. As such, there are no affirmative findings of what she found, but with the full record of the hearing before us, the findings can be understood and given meaning.

Looking to the record of the hearing, the only reference to the person who drew the blood was that it was a nurse (live testimony by the officer), and that it was an emergency room technician (oral testimony about what was in his report, but the report was not introduced into evidence).

I will readily concede, as I must under this record and the proper standard of review for review of a suppression hearing ruling, that there is no evidence that the person actually met the qualifications required by the Transportation Code.

Thus, the legal issue for this appeal is solely who had the burden of proof regarding compliance with the Transportation Code, section 724.017(a), requirements under the State's statutory exclusionary rule. TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005). I believe case authority by which we are bound places that burden squarely on the person seeking exclusion of the evidence—Robinson.

With all due respect, I believe footnote 2 in the Court's opinion reflects that the Court has misunderstood what the State was acknowledging and the consequences of the State's stipulation. It is not at all uncommon for a prosecutor to stipulate that a search or seizure was without a warrant. The prosecutor thus stipulates to a warrantless seizure and proceeds to prove a constitutionally acceptable exception to the Constitutional warrant requirement. Unless the prosecutor can then prove an exception to the warrant requirement, the evidence must be suppressed.

In this proceeding, when the State proved Robinson consented to the blood draw, the State had met the burden of going forward with the evidence that it had assumed by making the stipulation. If there was some other reason to suppress the blood draw, in essence, a statutory ground like article 38.23 and Transportation Code section 724.017, I do not believe that the burden to prove compliance was assumed by the State's stipulation. That would be a burden to prove compliance with a statute and such compliance is presumed.

Further, I am not sure that a prosecutor can cause such a profound change in the

law by such a stipulation as to actually alter the placement of the burden of proof. I have found no authority for such a shift nor has the Court cited any. It is important to note that what the prosecutor was stipulating to was a factual issue; a warrantless seizure. The Court has presumed the prosecutor can stipulate to a change in the placement of the burden of proof. I do not think a prosecutor can make such a stipulation.

The following is the Court of Criminal Appeals's conclusion regarding the burden to prove the violation of a statute, the result of which would require the exclusion of the evidence obtained in violation of the statute. *See Pham v. State,* 175 S.W.3d 767 (Tex.Crim.App.2005). While the evidence was obtained allegedly in violation of a provision of the Family Code rather than the Transportation Code, its holding nevertheless applies to all efforts to suppress evidence under article 38.23 of the Texas Code of Criminal Procedure.

The Court of Criminal Appeals in *Pham* concluded:

> Thus, the court of appeals correctly held that the burden is on the defendant, as the moving party in a motion to suppress evidence obtained in violation of the law under Art. 38.23, to produce evidence demonstrating the causal connection which this court required in [*Gonzales v. State*] *(Gonzales II)* [67 S.W.3d 910 (Tex.Crim.App.2002) ]. The burden then shifts to the State to either disprove the evidence the defendant has produced, or bring an attenuation-of-taint argument to demonstrate that the causal chain asserted by the defendant was in fact broken.

*Id.* at 774.

In its discussion leading up to this conclusion, the Court of Criminal Appeals discusses the holdings of several key prior decisions.

We also uphold the court of appeals' distribution of the burdens of proof in both of these cases. We have long held that "the burden of persuasion is properly and permanently placed upon the shoulders of the moving party. When a criminal defendant claims the right to protection under an exclusionary rule of evidence, it is his task to prove his case." *Mattei v. State,* 455 S.W.2d 761, 766 (Tex.Crim.App.1970) (quoting *Rogers v. United States,* 330 F.2d 535 (5th Cir. 1964), *cert. denied,* 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186 (1964)). In *Russell v. State,* we again cited this holding. Recognizing that this analysis was used for federal claims of illegal search and seizure under the Fourth Amendment, and because Texas statutory law is silent as to how the burden of proof is distributed on a motion to suppress, this Court adopted some of the rules followed by federal courts in distributing burdens of proof. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986).

Appellant argues that the burden should be on the State to show the causal connection, and analogizes this situation to the admissibility of confessions when issues of voluntariness are raised. Although the burden is on the State to prove that a defendant's confession was voluntary once the issue has been raised, that situation may be distinguished from the statutory violation of the Texas Family Code we have here. All a defendant must do on a claim of involuntary confession is to demonstrate there is a cognizable violation, and the confession is immediately presumed inadmissible unless the State can prove by a preponderance of the evidence that it was made voluntarily. *United States v. Reynolds,* 367 F.3d 294 (5th Cir.2004). There is no requirement that a defendant establish any causal connection between the ille-

gal conduct and the ensuing confession; the defendant simply must raise the voluntariness issue. In this case, it is not enough for the defendant to merely establish a violation. Under Texas case law, it is required that a causal connection be established, and we hold that the defendant, as the moving party wishing to exclude the evidence, is responsible for the burden of proving this connection.

Thus, the court of appeals correctly held that the burden is on the defendant, as the moving party in a motion to suppress evidence obtained in violation of the law under Art. 38.23, to produce evidence demonstrating the causal connection which this court required in *Gonzales II*. The burden then shifts to the State to either disprove the evidence the defendant has produced, or bring an attenuation-of-taint argument to demonstrate that the causal chain asserted by the defendant was in fact broken.

*Id.* at 773–74.

And the Court of Criminal Appeals has recently cited several of these same cases in a case involving the alleged violation of the Health and Safety Code in connection with a motion to suppress evidence from a blood draw. *See State v. Kelly,* 204 S.W.3d 808, 819–820 (Tex.Crim.App.2006). The opinion in *Kelly* contains an extensive discussion of the burdens of proof at trial and the standard of review on appeal. In *Kelly,* the Court of Criminal Appeals reminds the appellate courts that it is the party with the burden of proof who assumes the risk of nonpersuasion. *Id.* at 819 (*see* discussion in connection with and the content of footnote 22). The problem for Robinson on this record is that he never produced any evidence of a statutory violation, much less enough for the burden of *production* to shift to the State to disprove Robinson's evidence.

This assignment of the burden of proof has important practical implications. If all a defendant has to do is to move to suppress evidence and then the State must go forward to prove the evidence was lawfully obtained, we can expect to see an even greater number of these motions and related appeals. A defendant can essentially file a motion in every case and the State will have to defend the manner in which the evidence was obtained. Thus, the presumption of proper police conduct is destroyed. The defendant need not investigate the basis of the motion, and because the defendant may learn that the basis of the motion is groundless if he does investigate it, an effective and ethical attorney would decline to conduct any investigation of the facts before the motion was filed. The benefit to his client may be that the State cannot meet this new burden (including the extensive cost) placed on it in every case and, thus, decide to not use the evidence. Or it may be that the State cannot present the evidence to show that the evidence was lawfully obtained for some other reason, such as the witness has moved to another state and the cost of returning the witness for the hearing is excessive, or that the witness simply fails to appear for the hearing. The result under the State's new burden, imposed by the Court's holding, would be that the evidence is suppressed even though it is lawfully obtained.

## CONCLUSION

The only reason the trial court ordered the evidence suppressed in this case is that the State had failed to prove the qualifications of the person who made the blood draw. Thus, the trial court placed the burden of proof and, thus, the risk of nonpersuasion, on the State. This was an erroneous placement of the burden of proof. It is because Robinson failed to

prove that the blood was taken in violation of the Transportation Code that the burden of proof was not met and, therefore, Robinson's motion to suppress should have been denied. Because the Court erroneously affirms the trial court's order based solely on the improper placement of the burden of proof, I respectfully, but strongly, dissent.[1]

---

1. *Any Other Basis?* Given that the trial court findings are stated in the negative, they essentially constitute no findings at all. In light of the record and the trial court's comments, the basis of her holding and the meaning of the findings are clear. Thus, as in *State v. Kelly*, 204 S.W.3d 808, 819 (Tex.Crim.App.2006), I cannot ignore the record. If we do not venture off into some other basis for upholding the trial court's judgment, based on presumptions not supported by the record, there is no alternative other than to reverse the trial court's order.