Anthony **GRANZA** and Vincent Ferrara,
Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 22064.

United States Court of Appeals
Fifth Circuit.

May 24, 1967.

Clyde W. Woody, Marian S. Rosen, John P. Farra, Houston, Tex., for appellants.

James R. Gough, William B. Butler, Asst. U. S. Attys., Woodrow Seals, U. S. Atty., Houston, Tex., for appellee.

Before HUTCHESON, WISDOM and COLEMAN, Circuit Judges.

HUTCHESON, Circuit Judge:

Anthony Granza and Vincent Ferrara were tried and convicted by a jury in the district court of conspiracy to smuggle heroin and thereafter facilitate its transportation in violation of 21 U.S.C. Sec. 174.[1] Granza was sentenced to serve 20 years and Ferrara to serve 18 years. Both appeal, and we affirm their convictions.

Neither appellant produced any evidence in his behalf so the following is a summary of the government's evidence. The formation and operation of the conspiracy were described by Milton Abramson, one of the conspirators. Abramson testified that the conspiracy was initiated in a series of meetings held in Mexico City and New York City. His role in the conspiracy was to receive shipments of heroin from couriers at various places in the United States, pay for the heroin, and turn it over to another conspirator. He testified that appellants aided in the transfers of heroin, frequently furnishing the money which he used as payment.

A transfer of heroin which was to have taken place in Houston was frustrated by the arrest of Abramson and the courier, one Mrs. Castillo. She had crossed the Mexican border into Texas and proceeded to McAllen, Texas, where she received a suitcase later found to contain 22 pounds of nearly pure heroin. She went to the bus station, bought a ticket to Houston, and checked the suitcase at the baggage counter. While the suitcase was in the baggage room, it was searched (unknown to Mrs. Castillo) by customs agents who had placed her under surveillance pursuant to an informer's tip. After arriving by bus in Houston, she carried the suitcase to the Texas State Hotel where she was arrested. She agreed to cooperate with customs agents by completing the transfer of heroin. When Abramson later arrived at the hotel to receive the shipment, he also was arrested, and the suitcase was seized. Appellant Ferrara, who was in Houston to participate in the transfer of this shipment, stayed at the same hotel as Abramson.

Most of the other evidence corroborated this account. Since the defense offered no testimony, this statement of the facts remains unchallenged. Moreover, the sufficiency of the evidence to support the convictions is not attacked. However, numerous specifications of error are urged.

---

1. For other cases dealing with this conspiracy, see Marin v. United States, 352 F.2d 174 (5th Cir. 1965); Randazzo v. United States, 339 F.2d 79 (5th Cir. 1964).

Admitted into evidence were the heroin and a memo pad, found in Abramson's hotel room, on which was written Ferrara's room number and the telephone number of the Texas State Hotel; appellants assert these items were obtained by unreasonable searches and seizures, and therefore were inadmissible. No search warrant was acquired in connection with the search of the suitcase at the McAllen bus station, and although officers uncovering the memo pad did have a search warrant, appellants maintain the warrant was defective. We do not inquire into the legality of these searches, bceause we hold that appellants do not have standing to complain.

■ Applying the general principle that a party cannot claim a constitutional protection unless he "belongs to the class for whose sake the constitutional protection is given," Hatch v. People of State of New York ex rel. Reardon, 204 U.S. 152, 160, 27 S.Ct. 188, 190, 51 L.Ed. 415 (1907), F.R.Crim.P. 41 permits only "a person aggrieved" by an unlawful search and seizure to move for the suppression of the evidence so obtained. The Supreme Court has stated, in broad terms, that this means "one must have been the *victim* of a search or seizure, * * * as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure *directed at* someone else." (emphasis added). Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960). Fashioning the precise attributes necessary to qualify as an aggrieved person, however, has proved difficult.

This Court has had occasion to comment upon the effect of Jones v. United States, supra. In Henzel v. United States, 296 F.2d 650 (5th Cir. 1961), we noted

"In Jones, the Supreme Court held that a person accused of possessing narcotics in violation of the Federal Narcotics Laws could attack the Government's allegedly unlawful seizure of the narcotics even though (a) his presence in the apartment where the narcotics were seized was merely that of a 'guest' or 'invitee,' and (b) he did not admit to 'ownership' of the narcotics. In so holding, the Court repudiated the rule which had been adopted by many Courts of Appeals that, in order to qualify as 'a person aggrieved by an unlawful search and seizure,' the accused must show ownership or possession of the seized property or a substantial possessory interest in the invaded premises." Id. at 651.

We then observed that although Jones indicates what is *not* necessary in order to qualify as an aggrieved person under Rule 41, it failed to formulate a general rule with respect to what *is* required; hence Jones did not provide us with a precise and unequivocal definition of an "aggrieved person." Therefore we considered it helpful to compare Henzel's interest in the property seized and premises searched with Jones' same interests. Jones had sufficient interest to complain of a search of an apartment because he was lawfully present in the apartment. Henzel had standing to complain of the seizure of a corporation's books and records because he was the sole stockholder of the corporation, and had prepared much of the seized material which had been kept in his office where he spent the greater part of each working day; moreover, the search was "directed at" him. His interest was considered at least as deserving of protection as Jones'.

■ We think it clear that under the facts of the instant case, however, the appellants did not have the necessary interest in the items seized and premises searched to entitle them to complain of the government's conduct. Mrs. Castillo's suitcase was searched in the McAllen bus station. The appellants were nowhere in the vicinity; nor did they have any interest in the premises or the suitcase. The only conceivable interest they had in the heroin was the hope of deriving profit from it in the future through the conspiracy. This is not enough. In Diaz-Rosendo v. United States, 357 F.2d 124, 132 (9th Cir.), cert. denied, 385 U.S. 856, 87 S.Ct. 104, 17

L.Ed.2d 83 (1966), it was held that a defendant accused of conspiracy to smuggle narcotics could not complain of a purportedly illegal search of a co-conspirator's car which discovered narcotics, because the search was directed solely at the vehicle and person of the co-conspirator. See Wong Sun v. United States, 371 U.S. 471, 492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Bullock v. United States, 368 F.2d 483 (5th Cir. 1966). The search here was "directed at" the suitcase and person of Mrs. Castillo, and although that is not the exclusive test, see Henzel v. United States, supra at 652, it is entitled to weight. In light of these considerations, we conclude that appellants' right of privacy was not invaded, and therefore they cannot complain of admission into evidence of the heroin.

[redacted] That appellants also cannot contest the search of Abramson's hotel room by which the memo pad was found is even more clear. The appellants had no interest at all in the premises, and neither were they present. See United States v. Grosso, 358 F.2d 154 (3d Cir.), cert. granted, 385 U.S. 810, 87 S.Ct. 47, 17 L.Ed.2d 53 (1966); D'Argento v. United States, 353 F.2d 327 (9th Cir. 1965), cert. denied, 384 U.S. 963, 86 S.Ct. 1591, 16 L.Ed.2d 675 (1966); Armada v. United States, 319 F.2d 793 (5th Cir. 1963).

[redacted] Personal history forms filled out by appellants after arrest were offered at trial as samples of their handwriting. The forms are part of the routine processing of persons arrested by customs agents. They were used, however, by the government's handwriting expert to explain his opinion that other handwritten documents tending to connect appellants with the conspiracy were written by them. It is suggested that to put these samples in evidence was error on the ground that they were protected by the right against self-incrimination. Even if this contention has merit under Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), which we do not decide, reversal would not be required since this bit of evidence is cumulative of that in the extensive record which convincingly evinces the part played by appellants in the conspiracy.

[redacted] It is further urged that the samples were inadmissible because they were obtained (a) without appellants having been brought before a commissioner without unnecessary delay in violation of F.R.Crim.P. 40(b);[2] and (b) before appellants were properly advised as to their right to counsel. In addition to the cumulative nature of the samples, these two contentions are rejected on an independent ground for they are met and refuted by the record. The appellants were arrested separately at 2:30 a. m. and 6:30 a. m. on a Saturday morning. Because the arresting officers doubted whether a commissioner could be reached that morning, appellants were taken before a federal district judge at 10 a. m. the same morning. No contention is made that any coercive means, physical or psychological, were employed during the delay. No reason, other than unavailability of a committing magistrate, is suggested for the delay. Under these circumstances we hold that the delay did not violate Rule 40(b). See Rogers v. United States, 330 F.2d 535, 538 (5th Cir.), cert. denied, 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186 (1964); United States v. Walker, 176 F.2d 564, 567 (2d Cir.), cert. denied, 338 U.S. 891, 70 S.Ct. 239, 94 L.Ed. 547 (1949). The record also clearly reveals that appellants were ad-

2. F.R.Crim.P. 40(b) (1) provides: "If a person is arrested upon a warrant issued in another state at a place 100 miles or more from the place of arrest, * * * he shall be taken without unnecessary delay before the nearest available commissioner or a nearby judge of the United States in the district in which the arrest was made." Appellants in fact rely on F.R.Crim.P. 5(a), but since they were arrested in New York on a bench warrant issued in Texas, Rule 40(b) is the applicable rule. However, this does not affect appellants' contention because both rules incorporate the "without unnecessary delay" language, and we find no difference between the two rules significant to this case.

vised, and were aware of their right to counsel under the principles of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), which applies to the case at bar.

The appellants next contend that any conspiracy in which they were involved had terminated prior to the shipment of heroin carried to Houston by Mrs. Castillo. They cite testimony of co-conspirator Abramson which indicates that he felt he possessed enough money to enter another business and therefore was reluctant to continue in the smuggling operation. However, he also said that he was swayed against his "better judgment", and in fact he did continue in the conspiracy. Any suggestion that this testimony demonstrates a termination of the conspiracy is without merit.

█ It is also asserted that the admission into evidence of an airplane ticket showing that one J. Stassi, inferentially co-conspirator Joseph Stassi, Sr., flew from New York to Mexico City on November 20, 1962, was error on the ground that this evidence was without the scope of the indictment. The assertion is groundless since the dates during which the indictment alleged the conspiracy existed encompass the date of the plane flight.

█ █ Appellants next insist it was error to allow a customs agent to describe the activities of Mrs. Castillo subsequent to her arrest since such activities were not in furtherance of the conspiracy. It is true that out-of-court declarations, made when the declarant is no longer a conspirator and offered to prove the truth of their contents, are not admissible against one of the declarant's partners in crime. Wong Sun v. United States, supra, 371 U.S. at 490, 83 S.Ct. 407. However, that rule does not apply here. This was testimony of a government agent, not a former conspirator, describing the actions, not the declarations, of Mrs. Castillo after her arrest. See United States v. Costello, 352 F.2d 848, 853–854 (2d Cir. 1965), cert. granted, limited to question of constitutionality of tax wagering laws, 383 U.S. 942, 86 S.Ct. 1195, 16 L.Ed.2d 205 (1966).

The jury instructions of which appellants complain were that some evidence was binding only on Granza while other evidence was binding only on Ferrara. The instructions were clear. There were only two defendants in the case. The jury should have had no difficulty in understanding and applying the instructions which we therefore find were without error.

Other contentions pressed on us by appellants also are unavailing.

We conclude that none of the specifications of error urged by appellants are meritorious. Accordingly, the judgments are affirmed.