Michael J. WARNER

v.

James F. HOWARD.

No. 74–1214 Civil.

United States District Court,
M. D. Pennsylvania.

Feb. 6, 1976.

Michael J. Warner, pro se.

Donald Reihart, Dist. Atty., York County, York, Pa., for respondent.

## MEMORANDUM AND ORDER

NEALON, District Judge.

Petitioner was sentenced February 26, 1973, by the York County Court to a term of five to ten years after conviction for armed robbery, burglary, larceny, receiving stolen goods, wantonly pointing a deadly weapon, and assault and battery. He now seeks a writ of habeas corpus alleging that his in-court identification should have been suppressed because it was based on an improper pretrial lineup; the trial judge misstated the evidence; and his trial counsel was incompetent.

The factual background as set forth in the opinion of the Trial Court is, as follows:

"(O)n September 20, 1971, at about 9:00 P.M., Robert Ream, his wife Dorothy, and their daughter, Susan, were in their home, Mr. and Mrs. Ream were in the living room watching TV, and Susan was in the bedroom on the same floor. Two men entered the house: one wearing blue jeans, a rust colored shirt, a stocking over his face, gloves on his hands and sandals on his feet. The other wore dark colored pants, a light checked shirt, a woman's wig, and carried a sawed-off shotgun . . . ."

"(T)hey told the Reams that the gun was loaded and pointed it at Mr. and Mrs. Ream, requiring them to lie down, he on the sofa, and she on the floor, while the other man ransacked the house. Susan was accosted by the one ransacking the house as she walked toward the living room from the bedroom whereupon she also was forced at gun point to lie on the floor in the living room. The Reams were tied, though apparently not too securely. After the house was ransacked the two men left with a considerable amount of the Reams' personal property."

The Ream home was located on Hillside Terrace in a residential area of Manchester Township. Shortly before being informed of the Ream robbery, the Manchester Township police had noticed a 1965 Ford sedan parked on Bannister Avenue, some two hundred feet from the Ream residence. Bannister Street runs in an easterly-westerly direction and intersects Hillside Terrace. Because all the homes on this area have garages, the attention of the police was attracted to the Ford as it was the only vehicle parked on either street. The officers took the registration number of the vehicle which was registered in the name of codefendant Davy's wife. Upon being informed of the robbery, and after interview-

ing the Ream family, the officers proceeded to the Davy home where they found both defendants Davy and Warner. According to defendant Warner, they were taken into custody and placed ". . . in a lineup at City Hall two hours after the alleged robbery."[1] "A few minutes"[2] after being identified in the lineup by Mr. Ream as the man who wore a woman's wig and carried a shotgun, defendant Warner was taken before a Magistrate for a preliminary arraignment. Petitioner computes the total time that elapsed as ". . . I guess about, maybe four or five hours after the illegal arrest."[3]

Prior to trial, defendant moved to suppress the lineup identification because it was impermissibly suggestive. After hearing, this motion was denied. The defendant also moved to suppress evidence seized pursuant to a search warrant issued by a magistrate upon application of a York police officer. After hearing, the court concluded ". . . that neither the affidavit which was filed [by the police officer] as an application for the search warrant nor the information which he orally submitted to the Magistrate considered separately or together set forth sufficient facts which would constitute probable cause for the issuance of the search warrant . . . and the evidence obtained as a result of the search . . . is hereby suppressed."

At the trial Mr. Ream again identified defendant as one of the perpetrators of the crime.[4] There was no reference to the lineup identification in the Commonwealth's case in Chief. However, reference was made thereto by defense counsel who attempted during cross-examination to discredit Mr. Ream's in-court identification by suggesting that his lineup identification of defendant was hesitant and uncertain. Mr. Ream admitted that he hesitated before identifying defendant at the lineup. He

testified, nevertheless, that the lineup aside, he could positively identify defendant in the courtroom as one of the men in his house that night. The defendant was convicted and his trial counsel filed post-trial motions alleging (1) that defendant was placed in a lineup subsequent to an illegal arrest and, therefore, any identification *made in the lineup* is "fruit of the poisonous tree" and inadmissible in evidence, (2) the lineup was impermissibly suggestive, and (3) defendant was without counsel at the lineup.

The trial court dismissed the post-trial motions holding (a) that the in-court identification of defendant by Mr. Ream was positive and unwavering notwithstanding vigorous cross-examination; (b) that "though it be agreed that there was not a lawful arrest", this in no way tainted the identification by the victim; (c) the lineup identification was not impermissibly suggestive, citing *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); and (d) counsel was provided prior to the time of the lineup and was present during the time of the lineup was viewed by the victims of the offense. Subsequently, the defendant was allowed to file an amended post-trial motion alleging that there was an unnecessary delay in bringing defendant before a Magistrate after his arrest. Similarly, the trial court denied the amended motion holding that there was no unnecessary delay and that the defendant demonstrated no prejudice. Defendant appealed to the Pennsylvania Superior Court which affirmed the judgment in a per curiam order. Defendant filed a petition for allowance of an appeal from the Pennsylvania Superior Court to the Pennsylvania Supreme Court which was denied.

On May 8, 1974, defendant filed a Post Conviction Hearing Act petition in York County seeking relief on various grounds including:

---

1. Post Conviction Hearing Transcript (PCHT) 18.

2. PCHT 21.

3. PCHT 20.

4. Mrs. Ream and her daughter testified that they only had twenty to twenty-five seconds to view the man wearing the woman's wig because they were ordered to lie face down. Mr. Ream, on the other hand, was able to see him for five to ten minutes.

"  .   .

(3) Counsel did not include all the allegations on the direct appeal and also pursue the pretrial motions on the direct appeal.

(4) Counsel refused to ask the Court to suppress the In-Court identification like I ask him (sic) and thus the illegal identification stood.

  .   .   ."

A hearing on this Petition was held July 12, 1974, and is still under consideration by the York County Court.

. In the present habeas corpus application, petitioner advances the following contentions:

"I.   Where an accused is arrested and placed in a line-up prior to being presented to a Magistrate for a preliminary arraignment in accord with the Pennsylvania Rules of Criminal Procedure, should in-court identifications based on the line-up be suppressed at trial?

II.   Where an accused is arrested without probable cause and immediately presented in a line-up, should in-court identification based on the line-up be suppressed at trial?

III.   Where a line-up is impermissibly suggestive, should in-court identification based on that line-up be suppressed at trial?

IV.   Did the trial court commit fundamental error in instructing the jury that three victim-witnesses identified appel-lant once in court and once at a line-up where in fact two of the three victim witnesses were not able to identify appellant either in court or at the line-up?

V.   If the court treats issues I, II, III, and IV as waived for failure to timely raise such issues with the trial court, does such failure render defense counsel's performance of his duties ineffectual and incompetent so as to deny appellant due process of law?"

Initially, it should be emphasized that petitioner's counsel, Hugh Rebert, Esq., a member of the Public Defender's Office, was present at the pretrial lineup. He did not make any objection at that time to the lineup.[5] Although he did file a pretrial motion to suppress the lineup identification alleging that the others in the lineup were approximately twenty pounds heavier than petitioner and also that petitioner "was basically smaller in stature and with longer hair than the other members of the lineup". (PCHT 89) As previously noted, this motion was denied. At trial, Mr. Ream testified that the living room was well-lighted, that he observed the man wearing a wig for five to ten minutes from a distance of six to eight feet, that he noted his facial features and that he was positive about his identification.[6] Defense counsel did not move to exclude the in-court identification, believing that there was no basis for it.[7] Notwithstanding the failure to object at time of trial, petitioner now contends that the in-court identification testimony should be

---

5.   "Q.   Did you, from what you saw and observed, consider the personnel in the lineup to be satisfactory or not?

"A.   At that point, Your Honor, this was late at night and there was a very limited number of people that could have been involved at a lineup considering the people present, I considered it to be the best possible lineup procedure that could be made at that time.   Therefore, I permitted it."   (PCHT 88, 89)

6.   "Q.   Now aside of the lineup I ask you based on your observation, your opportunity to observe at the scene of the crime and the time you had, the lighting conditions you observed these two defendants and looking at these two men seated in Court are you able to positively identify them as the, as your assailants on September 20, 1971?

"A.   Yes."   (PCHT 24)

7.   "Q.   You did not present, if I understand correctly, any motion to have the in-court identification suppressed?   Would you tell me why you didn't?

"A.   The in-court identification?

"Q.   That is correct.

"A.   It is basically a question for the jury when we have an identification issue.   It seemed to me that there was sufficient time and opportunity for the victims to view the defendants.   Absent such time and opportunity, I don't feel there is any basis for filing such a motion.

"Q.   Had you succeeded in suppressing the lineup identification, would your attitude on that subject have been different?

"A.   Definitely."   (PCHT 79, 80)

suppressed because he was placed in a line-up (a) prior to being brought before a magistrate, (b) after being illegally arrested, and (c) that was impermissibly suggestive.

With reference to the alleged illegal arrest, apparently this contention was not made by pretrial motion or at trial but was raised by post-trial motion. Although the trial judge in his opinion used the language "though it be agreed that there was not a lawful arrest", it is difficult to determine whether he made such a finding or was assuming illegality for the purpose of discussion. In any event, there was no factual development of this issue in the record. However, because of the finding I make hereafter on the in-court identification, the need to decide the legality of the arrest is eliminated.

As to the alleged delay in bringing petitioner before a magistrate, if the case is still in the investigative stage it is proper for the police to permit witnesses to view a defendant for identification purposes. "If the purpose is investigatory, and not simply to keep the accused in custody until he confesses, if the police have good reason to believe that the suspect must be questioned further in order to determine whether he or any other person ought to be arrested, detention for a reasonable period of time is permissible . . ." *United States v. Vita*, 294 F.2d 524, 533 (2d Cir. 1961). Another factor negating excessive delay is the fact that defense counsel was present during, at least, some period prior to the lineup. Under the circumstances, the delay in bringing petitioner before a magistrate was not excessive.

The argument that the lineup was "impermissibly suggestive" is substantially diluted by the fact that defense counsel was present and felt "it to be the best possible lineup procedure that could be made at that time". The belated complaint that petitioner was smaller and had longer hair than the others in the lineup does not persuade me that it was unfair especially when Mr. Ream's testimony is considered as to what factors prompted his identification of petitioner. While a pretrial motion to suppress

the lineup identification was made, it was not advanced at trial and presumably is one of the pretrial motions that petitioner now attacks in his Post Conviction Hearing Act petition as not having been pursued on appeal. Once again, this may be presented in that proceeding relative to petitioner's claim that he was denied the effective assistance of counsel. Nevertheless, for the purpose of this action, I conclude that the lineup procedure was not "impermissibly suggestive".

Assuming arguendo that petitioner was illegally arrested, was not brought before a Magistrate without delay, and was placed in a lineup that was impermissibly suggestive, petitioner is still not entitled to relief unless it is determined that the in-court identification was not made independently of the lineup. A per se rule of exclusion of courtroom identification would be unjustified. *United States v. Wade*, 388 U.S. 218, 240, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The causal relation between the illegal arrest and the lineup is clear and direct. However, the in-court identification is removed in time and surroundings from the illegal arrest and requires an analysis of whether it has been arrived at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). "Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." *United States v. Wade*, supra, 388 U.S. at 241, 87 S.Ct. at 1940. A review of the record relative to the lineup and Mr. Ream's in-court identification satisfies me clearly and convincingly that his identification testimony at trial was based upon observations made of the

petitioner at the time of the crime and not as a result of lineup identification. As previously stated, he viewed the man he identified as petitioner for five to ten minutes in a well-lighted room from a distance of six to eight feet, particularly observing his facial features, and was positive about his identification.

Petitioner's point IV contends the trial judge committed fundamental error when he misstated the identification evidence in his charge to the jury. This point was never raised before the trial court. Moreover, there was no exception taken to the charge. Consequently, petitioner has failed to exhaust his state remedies. In any event, a reading of the charge reveals no error and certainly no error which "clearly show(s) a denial of due process such as to deprive the petitioner of fundamental fairness". *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969). Petitioner complains about one portion of the charge where the trial judge referred to the identification witnesses collectively, which petitioner interprets as an instruction that Mrs. Ream and her daughter, Susan, also identified him at the lineup and in-court. However, this interpretation is strained and a fair reading of the entire charge conveys no such impression.

Finally, the argument that defense counsel's performance was so ineffectual and incompetent as to deny petitioner due process of law was never raised before the trial court. It is one of the arguments advanced by petitioner in the Post Conviction Hearing Act proceeding. At that hearing petitioner conceded that no post-trial motion was filed concerning the alleged impermissibly suggestive lineup. (PCHT 14) He also raised the alleged failure of defense counsel to move to suppress the in-court identification. (PCHT 19) In sum, the State Courts must be given the opportunity to pass on the question of counsel's competence. *Lamberti v. Wainwright*, 513 F.2d 277 (5th Cir. 1975).

The petition for a writ of habeas corpus will be denied.

## ORDER

Now, this 6th day of February, 1976, in accordance with memorandum filed this date, it is hereby ordered that petition for a writ of habeas corpus is denied.