Jackie SANDERS, Individually and on behalf of all others similarly situated, et al., Plaintiffs,

v.

The CITY OF HOUSTON, et al., Defendants.

Civ. A. Nos. H–79–553, H–79–1400 and H–79–2012.

United States District Court, S. D. Texas, Houston Division.

June 18, 1982.

**696**

Bruce Griffiths, Griffiths & Saranello, Houston, Tex., for plaintiffs.

John Fisher, Asst. City Atty., Houston, Tex., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CARL O. BUE, Jr., District Judge.

### I.  Introduction

The three named plaintiffs, Jackie Sanders, Bernie Stevenson, and Lanita Moore, initiated this action on their own behalf and on behalf of all others similarly situated. The three separate actions were thereafter consolidated by order of the Court. On December 8, 1980, the Court certified a class to be represented by the named plaintiffs as "all persons who are or will be held at Municipal Detention Centers without access to bond for periods of time beyond that necessary to effect the appropriate administrative steps incident to arrest." Order, *Sanders v. City of Houston*, H–79–553 (S.D. Tex. December 8, 1980). At the trial on the merits, plaintiffs elected to non-suit all defendants except the City of Houston.

Plaintiffs contend generally that a current policy of the Houston Police Department which authorizes the police to detain arrestees on "investigative hold" violates the Fourth and Fourteenth Amendments to the United States Constitution, Article I, Section 11 of the Texas Constitution, and Articles 14.06 and 15.17 of the Texas Code of Criminal Procedure. Specifically, plaintiffs allege that this policy is in derogation of their rights to be promptly accorded a judicial determination of probable cause and to be promptly admitted to bond.

The cause was tried and evidence was presented to the Court without a jury on February 12 and 16, 1982. At the conclusion of the trial, the Court requested that the parties file additional legal memoranda and took the case under advisement. Pursuant to Rule 52(a), Fed.R.Civ.P., the Court hereby enters its Findings of Fact and Conclusions of Law detailing the reasons for its conclusion that plaintiffs should prevail on the merits. Further, it is the Court's decision that the defendant, City of Houston, its agents and employees should be permanently enjoined from detaining anyone arrested without a warrant for a period of more than twenty-four (24) hours without taking the person before a judicial officer for a determination of probable cause and that routinely every effort should be made to effect such procedures within a lesser period of time.

### II.  Findings of Fact

1.  Plaintiff Jackie Sanders is a resident of Houston, Harris County, Texas. Plaintiff's Second Amended Complaint.

2.  Plaintiff Bernie Stevenson is a resident of Houston, Harris County, Texas. Plaintiff's Amended Complaint.

3.  Plaintiff Lanita Moore is a resident of Houston, Harris County, Texas. Plaintiff's Amended Complaint.

4.  Defendant City of Houston is a municipal entity charged with providing police services to its residents. Answer of defendant City of Houston.

5.  Plaintiff Sanders was booked into the city jail at 10:10 p. m. on March 15, 1979, and charged with assault and misdemeanor theft. She was then placed on "investigative hold." Such hold was not released until this suit was filed some nineteen (19) hours later. Plaintiff was interrogated during this time, and the bond which had been set was tendered but refused. Plaintiff Sanders was not presented before a magistrate until over forty-three (43) hours after the time of her arrest. Stipulation.

6.  Plaintiff Stevenson was booked into the city jail at 3:14 a. m. on July 4, 1979, and charged with criminal trespass, a class C misdemeanor. At the time he was booked, bond was set. Yet, he was placed on "hold" by the narcotics division. Thirteen and one-half (13½) hours later, plaintiff Stevenson filed suit, and he was there-

after released on the charge of possession of a controlled substance. Plaintiff Stevenson did not see a magistrate until more than forty-three (43) hours after his arrest. Stipulation.

7. Plaintiff Moore was arrested at 2:15 a. m. on September 26, 1979, and charged with misdemeanor assault, a class C misdemeanor. She was placed on "hold" by the homicide division during which time she was interrogated and was not eligible for bond. At the time the present suit was filed, plaintiff Moore had been on "hold" for almost sixty (60) hours and was thereafter released with the charge of credit card abuse, a felony. Plaintiff Moore did not see a magistrate until more than five (5) days after her arrest. Stipulation.

8. The Houston Police Department has today and had at the time when the representative plaintiffs were arrested a policy whereby persons who are arrested by the Houston Police officers may be detained in the city detention facility at the request of an investigatory officer without having formal charges filed against them. Persons who are so detained are said to be on "hold". Stipulation.

9. Another situation in which the Houston Police officers routinely impose an investigative hold is the arrest of a person on the basis of an outstanding Class C misdemeanor warrant or the charge of a Class C misdemeanor promptly after arrest without a warrant. Stipulation.

10. Persons in the custody of the Houston Police Department who are on hold are usually not taken before a magistrate, nor are they permitted to be released on bond while they are on hold. Stipulation.

11. An investigative hold is authorized by a supervisor, generally of the rank of Lieutenant or Sergeant, after the supervisor has determined that in his opinion there was probable cause for the arrest. Testimony of Lt. Allen Tharling; Testimony of Lt. Tom Adams; Testimony of Lt. Charles Lofland; Testimony of Sgt. James McCoy.

12. There is an unwritten rule in the Houston Police Department that a suspect may be detained on investigative hold for as long as seventy-two (72) hours without charging the person or presenting him or her to a magistrate. Testimony of Douglas O'Brien; Testimony of Lt. Allen Tharling.

13. The procedures employed in processing an arrestee at the Houston Police Station are as follows. When the arresting officer and the suspect arrive at the police station, the officer fills out the police report and then takes the suspect to the jail complaint officer for booking. Defendant's Exhibit 32 at 14.

The booking process includes typing the police blotter (or information form), conducting a thorough search of the suspect, inventorying his property, and providing any necessary medical treatment. *Id.* at 15. During this period, the Identification Division participates in processing the prisoner by taking his fingerprints and photograph and by checking for any criminal history. *Id.* at 4 and 15; Testimony of Lt. Tom Adams. Laboratory tests, especially in narcotics cases, are conducted to properly identify any evidence confiscated by the arresting officer. Testimony of Sgt. James McCoy.

After the prisoner is booked into jail there may be a delay in presentment to the magistrate or filing charges in order to hold line-ups for identification purposes, to talk with witnesses, to check alibis, or to consult with the District Attorney's Office to determine the proper charges, if any, to be filed. Defendant's Exhibit 32 at 4; Testimony of Lt. Allen Tharling; Testimony of Lt. Tom Adams.

14. It is accepted as efficient police procedure to wrap up the loose ends of an investigation after the arrest but before a probable cause hearing. This may include such things as checking for outstanding warrants or other pertinent information in the department's records; ascertaining whether the records reveal a similar description in another but similar type crime; verifying background information obtained from another area if the suspect is not of this locale; and interrogating the suspect. Testimony of Robert di Grazia.

15. In the Robbery Division of the Houston Police Department, the primary reason for placing a person on hold is to stage a line-up to allow witnesses or a complainant to view the suspects. If the arrestee is suspected of committing multiple offenses, the police department will hold several line-ups extending the period of detention even longer than usual. The average time for investigative hold in the Robbery Division is twenty-six (26) hours if no charges are filed and thirty-five (35) hours if charges are filed. Testimony of Lt. Allen Tharling.

16. Most charges that come from the Burglary and Theft Division are filed within eight (8) hours of arrest, and it is very unusual to have a suspect on hold for more than twenty-four (24) hours. As in the Robbery Division, when there are witnesses to the crime the Burglary and Theft Division will schedule a line-up. Similarly, when the arrestee is suspected of committing more than one offense, the processing takes longer than average. Testimony of Lt. Tom Adams.

17. The Narcotics Division uses investigative holds primarily to complete its paperwork. This division seldom has a need for a line-up, and the estimated time to process the average case from arrival at the facility to release is eight (8) to twelve (12) hours. Testimony of Sgt. James McCoy.

18. The average processing time for arrestees in the Homicide Division is six (6) to eight (8) hours, and it is very unusual to hold a person for more than twenty-four (24) hours. This division has a tremendous outstanding backlog of warrants for murder. Additionally, when a suspect for murder is released, he or she may be very difficult to relocate. Therefore, the Homicide Division puts the suspect on hold in order to contact witnesses, to obtain statements from witnesses, to interrogate the suspect, and generally to put the case together. Testimony of Lt. Charles Lofland.

19. Part of the reason given by the defendant for the lengthy holds is that the Intake Division of the Harris County District Attorney's Office, the agency with the responsibility for determining whether charges should be filed, demands a greater quantum of evidence than just probable cause in order to file charges. Testimony of Lt. Allen Tharling; Testimony of Sgt. James McCoy; Testimony of Lt. Charles Lofland. The Intake Division requires, first, that there was probable cause for the arrest and, second, that there is sufficient evidence to obtain a conviction which will withstand scrutiny on appeal. Testimony of Douglas O'Brien.

20. The Intake Division requires reasonable certainty of the identity of the suspect, and this necessitates scheduling line-ups to have the witnesses or complainant view the suspects. Testimony of Lt. Allen Tharling; Testimony of Lt. Tom Adams; Testimony of Lt. Charles Lofland.

21. With regard to probable cause, a Houston police officer arrests a person only when the officer has reason to believe the person has committed or is about to commit a crime. This may be from direct observation of the person's actions, from information provided by another, or from the particular circumstances surrounding the event. Testimony of Lt. Allen Tharling; Lt. Tom Adams; Testimony of Sgt. James McCoy; Testimony of Lt. Charles Lofland. However, Douglas O'Brien, a former employee of the Harris County District Attorney's Intake Division, testified that on many occasions police officers presented cases to him for charges to be filed when there was not probable cause for arrest. Testimony of Douglas O'Brien. The Court finds that this constitutes insufficient evidence to establish an accepted policy within the Houston Police Department which would sanction arrest without probable cause. Notwithstanding this finding, the Court recognizes that there will be instances in which an officer arrests a person with the erroneous belief that there is probable cause.

22. A survey was conducted by the Houston Police Department from March 3, 1980, through March 24, 1980, which revealed that 5,602 prisoners were processed through the city's detention centers. Defendant's Exhibit 32 at 9. The arrests were

categorized according to the degree of the crime, and for the category of "county and district charges", which includes felonies, class A misdemeanors, and class B misdemeanors, there were 1503 arrests. *Id.* at 10. Of the 178 prisoners from this category who were ultimately released without charges having been filed, 29% or 52 persons were held more than twenty-four (24) hours. *Id.* at 36.

23. For the remainder of persons in the category of "county and district charges" who were charged with a crime and released on bond, the average time of detention, that being the time from arrival at the station until the posting of the bond, was thirteen and one-half (13½) hours. *Id.* at 18, 20 and 24.

24. In the City of Houston during 1981, there were over 96,000 prisoners processed through the detention centers. Testimony of Capt. Dennis Schumann. There are approximately one thousand (1000) robberies per month in Houston. Testimony of Lt. Allen Tharling. Additionally, there are up to two hundred fifty (250) burglaries per day in Houston. Testimony of Lt. Tom Adams. Homicides are numerous, and there is a tremendous backlog in outstanding warrants in the Homicide Division. Testimony of Lt. Charles Lofland.

25. In arriving at the above Findings of Fact, the Court has weighed carefully the credibility of the witnesses who have testified and finds that in instances wherein significant factual conflicts exist, the plaintiffs' witnesses are more persuasive.

### III. Conclusions of Law

1. This Court has jurisdiction over the constitutional and federal claims pursuant to 28 U.S.C. § 1343(a)(3), (4) (Supp.1982), and over the state claims pursuant to its pendant jurisdiction.

### Probable Cause Hearing

■ 2. After an arrest based on a policeman's on-the-scene assessment of probable cause, a suspect may be held in custody for a brief period of detention to take the administrative steps incident to arrest. However, the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1974).

Plaintiffs assert that the "administrative steps" allowed by *Gerstein, supra,* include only transportation to the station, booking into the jail, and filing charges. In resolving this issue, the Court finds guidance in the cases construing Rule 5(a) of the Federal Rules of Criminal Procedure which requires that a person who has been arrested shall be brought before the nearest available federal magistrate "without unnecessary delay."[1] Although Rule 5(a) applies only to federal actions, *Peters v. Rutledge*, 397 F.2d 731 (5th Cir. 1968), the standard set forth therein closely parallels that espoused in *Gerstein*, and, thus, the construction given by the Courts to Rule 5(a) is an aid in understanding the meaning of *Gerstein*.

■ In the cases where delay in presentment to the magistrate was at issue, Rule 5(a) has been construed to allow the following procedures to be completed before the accused was taken before the judicial officer: questioning the suspect,[2] *United States*

---

1. Rule 5(a) states as follows:
    An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041. If a person arrested without a warrant is brought before a magistrate, a complaint shall be filed forthwith which shall comply with the requirements of Rule 4(a) with respect to the showing of probable cause. When a person, arrested with or without a warrant or given a summons, appears initially before the magistrate, the magistrate shall proceed in accordance with the applicable subdivisions of this rule. Fed.R.Crim.P. 5(a).

2. Indeed, officers have an obligation to question the suspect to learn pertinent information. *United States v. Boyer*, 574 F.2d 951, 955 (8th

v. *Brown*, 459 F.2d 319, 325 (5th Cir. 1971), *cert. denied*, 409 U.S. 864, 93 S.Ct. 155, 34 L.Ed.2d 111 (1972); taking handwriting samples, *Granza v. United States*, 377 F.2d 746 (5th Cir.), *cert. denied*, 389 U.S. 939, 88 S.Ct. 291, 19 L.Ed.2d 292 (1967); tracking down a codefendant, *Rogers v. United States*, 330 F.2d 535 (5th Cir.), *cert. denied*, 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186 (1964); fingerprinting and photographing, *United States v. D'Argento*, 373 F.2d 307 (7th Cir.), *cert. denied*, 389 U.S. 833, 88 S.Ct. 31, 19 L.Ed.2d 93 (1967); completing a search of the premises where the arrest was effected, *Williams v. United States*, 273 F.2d 781 (9th Cir. 1959), *cert. denied*, 362 U.S. 951, 80 S.Ct. 862, 4 L.Ed.2d 868 (1960); checking the suspect's story or alibi, *United States v. Middleton*, 344 F.2d 78 (2d Cir. 1965).

A procedure which has been vigorously contested by the plaintiffs in the present case is the staging of pre-indictment line-ups. It has been held that Rule 5(a) does not prohibit delay for a reasonable time after arrest in order to arrange for a witness to the crime to view the defendant for identification purposes. *Young v. United States*, 435 F.2d 405 (D.C.Cir.1970); *Wise v. United States*, 383 F.2d 206 (D.C.Cir.1967), *cert. denied*, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968); *United States v. Quarles*, 387 F.2d 551 (4th Cir. 1967), *cert. denied*, 391 U.S. 922, 88 S.Ct. 1815, 20 L.Ed.2d 659 (1968); *Caldwell v. United States*, 338 F.2d 385 (8th Cir. 1964), *cert. denied*, 380 U.S. 984, 85 S.Ct. 1354, 14 L.Ed.2d 277 (1965); *Ralph v. Pepersack*, 335 F.2d 128 (4th Cir. 1964), *cert. denied*, 380 U.S. 925, 85 S.Ct. 907, 13 L.Ed.2d 811 (1965). Moreover, the Court of Appeals for the District of Columbia has ruled that the procedure for prompt identification of a suspect apprehended immediately after the offense is sound as a general procedure and presents no problems for exploration under Rule 5(a). *Wise, supra*, at 209.

*Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), is a case involving a pre-indictment line-up. Although the ruling in that case was that absence of counsel in a pre-indictment confrontation does not invoke the *per se* exclusionary rule, the Supreme Court based its decision on a fact situation which it termed "a routine police investigation." *Id.* at 690, 92 S.Ct. at 1882. This suggests indirectly that it is proper for police to permit witnesses to view a defendant before presentment to the magistrate in order to determine identification.

■ 3. This Court concludes that "administrative steps" as used in *Gerstein* include more than transportation, booking, and filing charges. The procedures enumerated in the preceding paragraphs involve legitimate police concerns. The rights of a suspect are subject to limitations arising out of society's interest in police activity undertaken to aid in the identification of the culprit and to obtain evidence which would aid in apprehending and convicting criminals. *Cf. Maryland Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (upholding an otherwise permissible search and seizure conducted solely to obtain evidence of the crime). Additionally, the procedures may provide significant proof of an exculpatory nature which would inure to the benefit of the arrestee. With regard to the issue of what constitutes "administrative steps" incident to arrest, the practices of the Houston Police Department are in harmony with the cases construing Rule 5(a). Accordingly, it is the Court's determination that such activities—completing paperwork, searching the suspect, inventorying property, fingerprinting, photographing, checking for prior record, laboratory testing, interrogating the suspect, verifying alibis, ascertaining similarities to other related crimes, and conducting line-ups—may be proper administrative steps incident to an arrest in a given case. Refer to Findings 13 and 14. While

Cir.), *cert. denied*, 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978). But the interrogation may not be used to make an ironclad case for the

enforcement officials. *United States v. Middleton*, 344 F.2d 78, 82 (2d Cir. 1965).

the Court finds such parameters to be sanctioned, this does not alter this Court's analysis and conclusion hereafter as to the time limitation within which an arrestee must be brought before a magistrate. The Constitution dictates that the individual's interest once in custody is paramount, and such interest cannot be undercut by arbitrary and protracted police procedures.

4. As a second but closely related issue for consideration, the plaintiffs contend that persons placed on investigative hold are subjected to an extended restraint of liberty without a judicial determination of probable cause. If this be true, such practice would be contrary to the mandate of *Gerstein* and would be in derogation of the constitutional rights of the persons so held. The key word is "extended". Consistent with the foregoing, the Court must construe the meaning of this word as it applies to the circumstances at hand.

█ Although *Gerstein* does not specify the time period within which presentment must occur, it gives some general guidelines. The probable cause determination "must be made by a judicial officer either before or promptly after arrest." *Id.* 420 U.S. at 125, 95 S.Ct. at 868. Further, "the key factor is significant restraint on liberty." *Id.* n.26. Again, this Court finds Rule 5(a) and the cases construing that rule to be analogous. The period of "unnecessary delay" under Rule 5(a) has been determined based upon the individual facts of each case by examining the circumstances between the commencement of detention or arrest and the presentation before the magistrate. *United States v. Kershner*, 432 F.2d 1066 (5th Cir. 1970). However, the delay of the hearing before the magistrate cannot be justified on the ground that police activity for that period was required to investigate other unsolved crimes for which there was no probable cause to arrest the accused. *Ricks v. United States*, 334 F.2d 964, 968 (D.C.Cir.1964). Similarly, police

cannot keep a prisoner in detention while they attempt to find further evidence to strengthen their case against him. *Rogers v. United States*, 330 F.2d 535 (5th Cir.), *cert. denied*, 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186 (1964).

█ The availability of the judicial officer has been considered a factor in some instances to determine undue delay under Rule 5(a). *United States v. Mendoza*, 473 F.2d 697 (5th Cir. 1973); (no magistrate available in Austin, Texas, until Monday morning.) However, police officers may not circumvent the rule by waiting to arrest a person at a time when they know a magistrate is not available. *Rogers v. United States, supra*, at 539. Further, where a magistrate has been indeed available, courts have not hesitated to find a delay to be unreasonable when there was no other justification for the detention. *United States v. Mayes*, 417 F.2d 771 (9th Cir. 1969). As there are numerous judicial officers who can arrange to be available on a rotating basis seven days a week in metropolitan Houston, the Court views this factor as necessarily weighing in the arrestees' favor. Whatever the circumstances found in some reported cases, the unavailability of a magistrate cannot receive judicial sanction as an excuse for failing to timely process arrestees through the local criminal justice system in light of existing conditions.[3]

Another factor is the number of people involved. When there are a great number of persons involved in the processing, the time may take hours rather than minutes. *Washington Mobilization Committee v. Cullinane*, 566 F.2d 107, 123 (D.C.Cir.1977).

While the determination of what constitutes "extended" will vary with the circumstances, there is a need to protect criminal suspects from all of the dangers which are to be feared when the process of police enforcement is entirely utilized. A remedy

---

**3.** On a completely separate issue—the seriously overcrowded conditions of the Harris County jails of which the city jail is the initial link—this ruling is entirely consistent with that expressed in *Alberti v. Sheriff of Harris County,* *Texas*, 406 F.Supp. 649 (S.D.Tex.1975). Whether couched in terms of restraint of liberty or physical conditions of incarceration, the Constitution speaks to protect the individual.

to curb the worst excesses of the investigative activity of the police is to fix a specific period of permissible pre-examination detention.[4] The Court of Appeals for the Fifth Circuit in the *Gerstein* case required an initial appearance within twenty-four (24) hours of arrest.[5] The portion of that opinion which dealt with presentment to the magistrate was upheld by the Supreme Court, although the Fifth Circuit's requirement of full procedural safeguards which are found in an adversary hearing was reversed. Moreover, this Court finds guidance in its previous opinion, *Alberti v. Sheriff of Harris County, Texas*, 406 F.Supp. 649 (S.D.Tex.1975), which established parameters for enforcement procedures within Harris County. That case required that each person charged with an offense shall be brought before a magistrate "as soon as possible but in any event not later than 24 hours after the criminal complaint has been filed or the arrest made." *Id.* at 676.

Two other district courts have dealt with the problem of what constitutes "extended restraint of liberty." The court in *Dommer v. Hatcher*, 427 F.Supp. 1040 (N.D.Ind. 1975), *rev'd in part*, 653 F.2d 289 (7th Cir. 1981), held that twenty-four (24) hours without presentation before a magistrate is the maximum permissible time period. However, the court in *Lively v. Cullinane*, 451 F.Supp. 1000 (D.D.C.1978), ruled that one-and-a-half (1½) hours is the longest a person can be lawfully detained before presentment. The latter court based its decision on the reasoning, similar to plaintiffs' argument, that completing information forms and searching the individual were the only administrative tasks incident to arrest. That court specifically held that fingerprinting, photographing, and conducting line-ups were not administrative steps as meant by *Gerstein* and were thus reject-

ed as reasons for delay in presentment. This Court respectfully differs with the holding of the *Lively* Court and with deference submits that those activities are a part of proper law enforcement procedures. *Accord, Warner v. Howard*, 416 F.Supp. 754, 758 (M.D.Pa.1976). The people as well as the accused are entitled to their fair measure of due process by way of effective administration of the criminal laws. Without the allowance of certain procedures, especially those pertaining to identification, the police officials would be hard pressed to solve the crimes of a large city and to protect its citizens.

There is a delicate balance to be struck between the interests of the State in its duty to protect society and the interests of the individual in his freedom of movement. This Court is not unaware of the high crime rate in the City of Houston, and assuredly the given environment must be taken into account when considering limitations upon enforcement procedures. Refer to Finding 24. Yet, *Gerstein* teaches that once a suspect is in custody, his need for a neutral determination of probable cause increases significantly. Unfounded interference with liberty can take a disastrous toll on one's life.

■ 5. Hence, it is the conclusion of this Court that when a person has been arrested on a policeman's assessment of probable cause, the person arrested must be brought before a judicial officer as soon as possible, but in any event not later than twenty-four (24) hours after the arrest. This limitation will apply as well on a weekend or holiday, and the appropriate magistrates or other judicial officers will make the necessary arrangements to be available to perform such duties on weekends or holidays so that this ruling is strictly observed and enforced.

4. Some jurisdictions have set statutory maximum periods of permissible detention. See Cal.Penal Code § 825 (West 1970) (without unnecessary delay; two-day maximum); Ind. Code § 18–1–11–8 (1978) (twenty-four hours); Mo.Ann.Stat. § 544.170 (Vernon 1953) (twenty-hours unless prisoner charged and held by warrant); N.H.Rev.Stat.Ann. §§ 594:2, 19, 20, 22 & 23 (1974) (twenty-four hours maximum); R.I.

Gen.Laws § 12–7–1 (1981) (two-hour detention without arrest in certain cases; twenty-four hours after arrest).

5. *Pugh v. Rainwater*, 483 F.2d 778 (5th Cir. 1973), *rev'd on other grounds sub nom, Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

■ Consequently, the Court concludes that within the City of Houston Police Department, there is the established practice of unlawfully detaining arrestees which is tantamount to significant pretrial restraint of liberty. This is evidenced by the fact that the Houston Police Department permits an investigative hold to remain in effect for as long as seventy-two (72) hours without an explanation therefor. Refer to Finding 12. Additionally, the average time for investigative holds in the Robbery Division is twenty-six (26) hours if no charges are filed and thirty-five (35) hours if charges are filed. Refer to Finding 15. This does not even account for all of those persons who are held far beyond the average time. This policy is in violation of the suspects' rights guaranteed under the Fourth Amendment.

■ Similarly, the constitutional rights of the three named plaintiffs were violated by the extended detention to which they were subjected without being presented to a magistrate for a determination of probable cause. Plaintiff Sanders was held for more than forty-three (43) hours before seeing a magistrate. Refer to Finding 5. Plaintiff Stevenson was detained also for over forty-three (43) hours. Refer to Finding 6. And Plaintiff Moore did not see a magistrate for a probable cause determination until more than five (5) days after her arrest. Refer to Finding 7. It is abundantly clear to the Court that these persons were wrongfully detained.

### Arrest Without Probable Cause

■ 6. Plaintiffs assert that there is an accepted policy within the Houston Police Department which permits arrest without probable cause. It is axiomatic that no one can be held in custody where probable cause for arrest does not exist. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Moreover, a person cannot be arrested and placed in jail simply to allow the police to

complete its investigation. "Because the standards [for arrest and detention] are identical, ordinarily there is no need for further investigation before the probable cause determination can be made." *Gerstein, supra*, 420 U.S. at 120 n.21, 95 S.Ct. at 866 n.21. Either there is or there is not probable cause.

As the name implies, probable cause deals with probabilities. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

> Probable cause exists where "the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

*Id.* at 175, 69 S.Ct. at 1310. The *Brinegar* Court explained that this standard allows a safeguard for citizens but also gives fair leeway to the police officers in enforcing the laws, especially in ambiguous situations.

■ 7. The officers of the Houston Police Department are apparently aware of the standard for probable cause. Refer to Finding 21. And although there may be instances wherein officers, overzealous in carrying out their duties, may arrest persons without probable cause, the Court concludes that there is no widespread practice or accepted policy within the Houston Police Department which would sanction arresting persons without probable cause. *Id.* Indeed, the safeguard in such a situation is insisting upon a prompt determination of probable cause by an objective, detached judicial officer.

### Denial of Bail

■ 8. Another issue in the present cause is whether the Houston Police Department's hold policy denies members of the plaintiff class their right to bail.[6] The

---

6. Plaintiffs argue in the section of their brief concerning bail that they are denied also the right of counsel. Clearly, *Gerstein* resolved

that issue. "Because of its limited function and its nonadversary character, the probable cause determination is not a 'critical stage' in the

resolution of this issue is governed by article 1, section 11 of the Texas Constitution:

> Sec. 11. All prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident; but this provision shall not be so construed as to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law.

Tex.Const. art. I, § 11.

This section has reference only to prisoners before conviction, *Ex parte Laday*, 594 S.W.2d 102 (Tex.Cr.App.1980), and, originally, the only exception to bail as a matter of right was proof evident of a capital offense. *Ex parte Grayson*, 104 Tex.Cr.R. 365, 284 S.W. 553 (1926). A section was added subsequently to the Texas Constitution which provides three other exceptions. Bail may be denied under article 1, section 11–a where the person (1) has been theretofore twice convicted of a felony; (2) is accused of committing a felony while on bail for a prior felony; and (3) is accused of a felony involving the use of a deadly weapon after being convicted of a prior felony.

▮ In general rule favors the allowance of bail. *Ex parte Davis*, 574 S.W.2d 166 (Tex.Cr.App.1978). Moreover, presumptions are not to be indulged against the applicant, and the power to deny or require bail will not be used as an instrument of oppression. *Ex parte Stephenson*, 71 Tex.Cr.R. 380, 160 S.W. 77 (1913).

▮ 9. The Court concludes that denial of bail because of an investigative hold does not fall within one of the four enumerated exceptions. Hence, a denial of bail when the prisoner has been held beyond the permissible period of restraint is a violation of article 1, section 11 of the Texas Constitution. As with delay in presentment to the magistrate, bail may be properly denied within the brief period allowed to effect the necessary administrative steps incident to arrest. Refer to Conclusion 5. *Accord, Dommer v. Hatcher, supra*, at 1047.

The Court determines that within the Houston Police Department, there exists the accepted policy of refusing tendered bail after the permissible period of detention has elapsed. Refer to Findings 10 and 22. Specifically, the right of bail guaranteed by the Texas Constitution was unlawfully denied to the three named plaintiffs. Refer to Findings 5–7.

### Violation of Texas Statutes

10. Plaintiffs' final assertion is that the defendant's policy of investigative holds violates Articles 14.06 and 15.17 of the Texas Code of Criminal Procedure.[7] The predecessor of Article 15.17 was Article 217 of the 1925 criminal statutes, and it provided, "In each case enumerated in this chapter, the person making the arrest shall immediately take the person arrested . . . before the nearest magistrate where the arrest was made without an order." Tex.Code

---

prosecution that would require appointed counsel." 420 U.S. at 122, 95 S.Ct. at 867. Thus, plaintiffs' contention that they are being denied their right to counsel by defendant's policy of investigative holds is without merit.

7. Article 14.06 states in pertinent part as follows:

> In each case enumerated in this Code, the person making the arrest shall take the person arrested or have him taken without unnecessary delay before some magistrate. . . . The magistrate shall immediately perform the duties described in Article 15.17 of this Code.

Tex.Code Crim.Pro.Ann. art. 14.06 (Vernon 1977). Article 15.17 states in pertinent part as follows:

> In each case enumerated in this Code, the person making the arrest shall without unnecessary delay take the person arrested before some magistrate. . . . The magistrate shall in clear language inform the person arrested of the accusation against him and of any affidavit filed therewith, of his right to have an attorney present during an interview at any time, of his right to request appointment of counsel, if he is indigent and cannot afford counsel, and of his right to have an examining trial. He shall also inform the person arrested that he is not required to make a statement and that any statement made by him may be used against him. The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall admit the person arrested to bail if allowed by law.

Tex.Code Crim.Pro.Ann. art. 15.17 (Vernon Supp.1982).

Crim.Pro. art. 217 (1925). In the present Code of Criminal Procedure, the Texas Legislature in 1967 substituted "without unnecessary delay" for "immediately". The significance of this substitution is found in the Special Commentary following Article 15.-17: "It appears that this article in part was taken from Rule 5(a), Federal Rules of Criminal Procedure, with certain necessary changes." And so the inference can be drawn that the Texas Legislature was striving for uniformity with the Federal Rules.

The Texas Courts have interpreted the statutes at hand much the same as the Federal Courts have interpreted Rule 5(a). The Texas Court of Criminal Appeals explained,

"The general doctrine, as to what constitutes reasonable delay or reasonable excuse for failure to immediately take an arrested person before a magistrate, is stated in 25 C.J. 493 as follows: 'What is a reasonable time depends upon the facts of each case. Prolonged detention must, however, be considered with regard, among other things, to such matters as judicial accessibility, and facilities, the unavoidable duties of the officers making the arrest, the intervention of Sunday, or a holiday, the intoxication, or mental condition of the person detained.' "

*Gilbert v. State,* 162 Tex.Cr.R. 290, 284 S.W.2d 906, 907 (1955). With regard to the availability of the magistrate, the decisions of the Texas Courts are consonant with the federal decisions. For example, the defendant's confession was held inadmissible where the magistrate was in the same building but the officers failed to contact him. *Green v. State,* 615 S.W.2d 700 (Tex. Cr.App.1980), *cert. denied,* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981). Hence, what is meant by "without unnecessary delay", "as soon as possible," or "promptly" will vary with the circumstances.

■ 11. The Court concludes that Articles 14.06 and 15.17 are to be construed in harmony with *Gerstein.* Accordingly, these statutes allow a person who is arrested on probable cause to be held for a brief period in order that the police officers may accomplish necessary administrative tasks incident to arrest, but in any event the person may not be held longer than twenty-four (24) hours.

■ Supported by the same findings of fact which compelled the conclusion above that the contested hold policy violates the Fourth Amendment, the Court determines that the policy of investigative hold as is presently employed by the Houston Police Department is violative of Articles 14.06 and 15.17. Similarly, the statutory rights of the three named plaintiffs were violated by the significant restraint of liberty to which they were subjected. Refer to Conclusion 5.

12. In the event the foregoing Findings of Fact also constitute Conclusions of Law, they are adopted as such. In the event the foregoing Conclusions of Law also constitute Findings of Fact, they are adopted as such.

*Permanent Injunction*

■ In accordance with the conclusions set forth above, it is hereby ordered that defendant City of Houston, its agents and employees, shall be enjoined from detaining persons arrested for probable cause longer than twenty-four (24) hours without bringing the persons before a judicial officer for a neutral determination of probable cause. In addition to determining whether there exists probable cause for detaining the arrestee, the judicial officer shall inform the person of his constitutional rights. If from the information the magistrate or other judicial officer determines that there was probable cause for the arrest, the prisoner shall either be admitted to bail as allowed by law, or, if he is unable to secure bail, be committed to custody. Otherwise, if the magistrate finds that there was no probable cause for arrest, the prisoner must be released.

Plaintiffs are hereby directed to submit a Final Judgment incorporating by reference the foregoing Findings of Fact and Conclusions of Law within ten (10) days hereafter.